# SUPREME COURT OF APPEALS

### OF

# VIRGINIA.

1880—NOVEMBER TERM.

## Richmond,

### SHERMAN'S ADM'R V. SHAVER AND ALS.

#### November 11.

### Absent, *Moncure*, P.*

1. In October, 1859, R recovered a judgment against S, on which execution was issued which went into the hands of C, the deputy of K, the sheriff, and was levied by C on the property of S, which he left with G, who converted it to his own use. R moved against K and recovered a judgment against him for the amount of his judgment against S; which K paid. C being insolvent, K sued G, his surety, on C's bond of indemnity to K, and recovered a judgment against G, which he paid. HELD: G is not entitled to be subrogated to the lien of R's judgment against G, as against junior judgment creditors of S.

2. A sheriff, who by his act, or the act of his deputy, in violation of official duty, has suffered property liable to levy, and which has been levied on by him or his deputy, to be converted by the debtor to his own use, cannot be allowed, as against and to the prejudice of creditors holding liens on the debtor's remaining property, to have indemnity thereout to the use of another, by substitution (if admissible in any case) for what he has been compelled to pay on account of official delinquency or misconduct.

* This case was argued at Staunton when Judge *Moncure* was not present.

This case was heard in Staunton, but was decided in Richmond. In a creditor's bill pending in the circuit court of Rockingham county, by *Swartz and als.* v. *Levi Shaver,* to subject the real estate of said Shaver to satisfy judgments which had been recovered against him, George Sherman, in October, 1879, filed his petition in the cause, setting out the facts upon which he claimed to be subrogated to the lien of a judgment recovered in October, 1857, in the circuit court of Rockingham county, by P. Rham against G. H. Harris and said Shaver. The facts as stated in the petition, and as appears from the evidence, are as follows :

In October, 1859, P. Rham recovered a judgment against H. M. Harris and Levi Shaver for $300, with interest and costs. An execution of *fieri facias* was issued on this judgment, which went into the hands of J. R. Coursey, deputy of John R. Keogler, sheriff of the county, and was levied on property of Harris and Shaver; but Shaver's property was not sold, and was disposed of by Shaver. Rham then, upon a notice to Keogler, the sheriff, recovered a judgment against him for the amount of the judgment, and this judgment was paid by Keogler. This was in 1860. Coursey became insolvent, and in 1864 removed from the State. In 1875 the administrators of Keogler recovered a judgment against George Sherman and another who were the sureties of Coursey in his bond to Keogler, for the faithful performance of his duties as deputy for Keogler, for the amount that Keogler had been compelled to pay on Rham's judgment against Shaver; and the other surety being insolvent, the judgment was paid by George Sherman.

Some of the judgment creditors of Shaver opposed the prayer of the petition, insisting that under the circumstances of this case Sherman was not entitled to be subrogated to the lien of Rham's judgment; the lands of Shaver having been sold in the progress of the cause, and the pro-

ceeds of the sale not being sufficient to pay the subsequent judgments against Shaver.

The cause came on to be heard on the 7th of November, 1879, when the court held that Sherman was not entitled to be subrogated to the lien of Rham's judgment against Shaver, and dismissed the petition. And thereupon, Sherman having died in the progress of the cause, his administrator applied to a judge of this court for an appeal; which was awarded.

*Robert Johnston,* for the appellant.

*James Kenney* and *C. T. O'Ferrall,* for the appellees.

BURKS, J., delivered the opinion of the court.

The case to be decided, omitting names of parties, is briefly this:

An execution, sued out by a creditor on a judgment which bound lands of the debtor, went into the hands of a deputy sheriff, who levied the same on personal property of the debtor sufficient to satisfy the writ. He never made sale of the property, but left it in possession of the debtor, who converted and disposed of it to his own use. For this default, the creditor, by motion, recovered a judgment against the sheriff for the amount of the debt, interest and costs in the execution, which the sheriff paid, and, in turn, recovered against two of the sureties of the deputy, on the indemnifying bond of the latter to him, a judgment for the like amount, which one of the sureties (the other two as well as the deputy being insolvent) paid, and thereupon filed his petition in a pending chancery cause, wherein the lands of the original debtor were being subjected to the satisfaction of judgments binding the lands, praying to be

substituted to the lien of the judgment on which the execution referred to had issued. The claim was resisted by junior lien creditors on the ground that the right of subrogation did not apply in such case, at least as against them; and on the hearing the court below by its decree denied the prayer for relief and dismissed the petition. The question, on appeal allowed the personal representative of the surety who died after the petition was filed, is, whether there is error in said decree.

The whole record has not been brought up. From such parts of it as we have, it appears that the judgment on which the execution was sued out is the first lien on the debtor's lands. Those lands, it seems, have been sold, and the proceeds in the hands of the court not being sufficient to satisfy all the liens, the controversy is as to the application.

"A surety," says Chancellor Wythe, "is one bound that something shall be done, not by himself in the first instance, but by some other hand, and in case of default by this prime agent, that the obligor shall perform the act, or compensate for non-performance." Wythe's Reports (Minor's Edition), 281. To make one a surety he must be bound by contract or engagement entered into at the request of another who is the real debtor. Such request, though generally express, may be implied in some cases, as, for instance, from a subsequent promise of the principal to indemnify the surety for money paid by the latter for him.

The appellant's intestate was not surety for the original debtor in this case. He was no party to the contract of that debtor with his creditor, nor did he ever undertake for him or with him to pay his debts. He bound himself as surety for the deputy only by the bond (not a statutory obligation) given to the sheriff with the usual condition, as is supposed, that such deputy should faithfully discharge

the duties of his office, and indemnify the sheriff and save him harmless against any loss or damage he might incur or sustain by reason of the deputy's default. It was for a breach of this condition by the deputy that the liability was incurred by the surety, for which the sheriff recovered against him the judgment which he paid. Upon such payment being made, the surety, according to well settled principles, became entitled in equity to be substituted for his indemnity to all the liens, securities, rights, remedies, and means of payment held by the deputy's creditor (the sheriff) for the liability of the deputy which was discharged by the surety. This right of substitution, so far as it related to the deputy and his property, was worthless, as he was insolvent, had removed beyond the jurisdiction of the court, and there was no judgment against him. But if the sheriff was entitled to securities and remedies against other parties primarily bound to discharge the judgment which had been recovered against him, and which was the foundation of his recovery against the surety, then the surety was also entitled to the benefit of those securities and remedies. Therefore, if the sheriff had the right to be substituted for his indemnity to the lien of the judgment which he satisfied to the creditor by paying the recovery against himself, the surety through him had the same right. This may be illustrated by a reference to the case of *Pinckard* v. *Woods*, 8 Gratt. 140. An administrator with the will annexed committed a *devastavit* or breach of trust by selling bonds of the estate at a heavy discount, when the necessities of the estate did not require such sale, and converting the proceeds to his own use. In a suit in equity by the legatees, they recovered against the administrator and his sureties the amount of the bonds thus converted, which (the administrator being insolvent) the sureties paid. They thereupon brought their bill against

the purchaser of the bonds as well as the administrator, charging the breach of trust and active participation therein by the purchaser, and praying indemnity from him. The relief prayed for was granted by decree below, and that decree was affirmed here. Thus, it is seen, that the sureties in that case were substituted to the rights and remedies of the legatees not only against their principal (the administrator) but also against a third party, for whom they were not bound and with whom they had no connection, the purchaser of the bonds being held liable to the sureties as substituted to the remedies of the legatees, on the principle, more distinctly announced in a subsequent case (*Barksdale and others* v. *Finney and others*, 14 Gratt. 338), that all who participate in a breach of trust are jointly and severally liable.

If in this case the surety has any equity, it is through the sheriff; and the inquiry is, was the sheriff, whose rights and remedies were acquired by the surety, entitled by substitution to the lien of the original judgment which was satisfied to the creditor by him? After what has been said, it is hardly necessary to add that the sheriff was not the surety of the original debtor. His only obligation was that of a public officer, and the liability he discharged was incurred by the default of his deputy, for whose acts in the exercise of his delegated authority, the sheriff was civilly responsible. The judgment against him is evidence conclusive, that he was held to account for the violation of official duty in the person of his deputy; and the first question suggested is, will a court of equity, upon the principles which regulate the administration of justice in that forum, extend to such delinquent the same relief it accords to a surety?

The principle of subrogation is certainly very comprehensive, and it is said, that the rule is broad enough to include every instance where one pays a debt for which an-

other is primarily liable, and that should in equity and good conscience have been discharged by him. 1 Lead. Cas. Eq. (4th Amer. Ed.), Part 1, top p. 148, and cases cited in notes to *Dering* v. *Winchelsea.* Again, "Wherever one is liable in person or estate to a charge which ought to be borne primarily by another or his estate, the person first-named will have *the equity of a surety,* and he is entitled to the securities and remedies of a creditor as a means of carrying that equity into effect." *Wilks* v. *Harper,* 2 Barb. Ch. R. 338, cited 2 Lead. Cas. Eq. (Ed. *supra*), Part 1, top pp. 282, 283—notes to *Aldrich* v. *Cooper.*

Under the influence of these liberal principles, which appear to me to be sound and just, I am not prepared to say, that an officer, who for default has been compelled to pay the debt of another, is not, *in any case, under any circumstances,* entitled to relief by subrogation *as against the debtor alone.* There may be cases in which no fraud is imputable to the officer—no moral turpitude of any description—no semblance of bad faith or even gross negligence—cases in which he is held simply for the failure to exercise the exact care and diligence which the law requires—cases, it may be, in which his liability has been incurred by honestly but indiscreetly reposing in the debtor a confidence which he knavishly abused to his own gain—in which the parties are not *in pari delicto.* And yet even in such cases, considerations of public policy may, perhaps, require the denial to the officer of any active assistance by the courts against the debtor, though the interests of third parties are not involved.

The precise question suggested, whether an officer, who has been compelled by a breach of the condition of his official bond to pay the debt of another, can, under any circumstances, have indemnity, by equitable substitution, as against the debtor alone, does not necessarily arise in the

case before us, and therefore need not be decided. The debtor is making no defence. The controversy is exclusively between the surety of the deputy, claiming the equity of the sheriff, on the one side, and the junior lien creditors of the debtor on the other.

If it were conceded that this is a case in which the surety might, as against the original debtor, have relief by substitution to the judgment of the original creditor, it would not be a necessary consequence that he would be entitled to that relief as against the other creditors.

The right of subrogation, broad and comprehensive as it is admitted to be, has its limits, and is by no means a matter of course, under all circumstances, even in favor of sureties. It is a creature of equity and is never enforced to the injury or prejudice of the creditor, whose rights and remedies are sought to be used (*Grubbs* v. *Wysors*, 32 Gratt. 127, 131), nor against the superior equities of third persons. 1 Lead. Cas. Eq. (Ed. *supra*), Part 1, p. 152, and numerous cases there cited.

In *Clevinger and others* v. *Miller*, 27 Gratt. 740, subrogation was denied to the sheriff mainly, as I understand the case, on the ground of the superior equities of the creditors holding junior liens. I refer to the opinion of the court delivered by Judge Staples, in which the reasoning and the principles affirmed would seem to be fatal to the pretensions of the present appellant. The sheriff had paid off sundry executions in his hands, never returned them satisfied, and claimed to hold the judgments as his own, though without assignment, and without request from the debtor to pay them. He had never levied them, and it was made a question whether the debtor owned any personal property on which a levy could be made, though the court inferred from the circumstances that there was such property. In the case under consideration, a levy was actually made on

Sherman's Adm'r v. Shaver and als.

property of the debtor sufficient to satisfy the execution, and then, it would seem, was abandoned or released by the officer without authority from the creditor. At least, no sale was ever made, and the surety himself, in his petition filed for relief, says, "the property was left in the hands and under the control of the said Levi Shaver (the debtor), who converted and disposed of the same."

Now, if the property levied on by the officer had been sold by him and the net proceeds applied to the execution in his hands, it would have been satisfied by the right person to the right person, the debt absolutely extinguished in equity as well as at law, and the whole of the debtor's land left to his other creditors. For the negligence or misconduct of the deputy in not making the sale and application, the sheriff was compelled to pay the debt to the creditor, which payment was a satisfaction at law; and now on behalf of the surety of the defaulting deputy, claiming relief through the supposed rights of the sheriff, who has been held in judgment to answer for his deputy's wrong, a court of equity is asked to give effect to the satisfied judgment and the lien thereof as if in force, and thus withdraw from the other creditors enough of the land fund to indemnify the surety for the loss sustained by reason of his principal's negligence. The bare statement of such a claim would seem to be a complete exposure of its gross injustice. It surely cannot be necessary to argue such a proposition at any length.

If everything be conceded which could be claimed for the conduct of these officers in this transaction—that they were guilty of no fraud—were innocent—chargeable only with want of proper care or due diligence, of which at least they stand convicted by the judgments against them, yet, who ought, in good conscience, to bear the loss of the property levied on and converted by the debtor to his own use? If the officers are innocent, the creditors certainly

are free from all blame. The answer to the question is plain and is well expressed by the maxim which, like the doctrine we have been discussing, is founded on natural justice, that "wherever one of two innocent persons must suffer by the acts of a third, he who enables such third person to occasion the loss must sustain it." Ashurst, J., in *Lickbarrow* v. *Mason*, 2 Term R. 23, 70.

If an execution against principal and surety be levied on property of the principal, and a third person, at the request of the principal but without the consent or concurrence of the surety, intervene and bind himself as surety in a bond for the forthcoming of the property on the day of sale and the bond be forfeited, although such third person thus becomes bound *as surety for the debt* (*Garland, &c.,* v. *Lynch*, 1 Rob. R. 576), yet he is not entitled on making payment to be substituted for contribution to the *original* judgment against the *original surety* (*Givens and others* v. *Nelson's Ex'or and others*, 10 Leigh, 397; *Stout* v. *Vause, &c.*, 1 Rob. R. 169, 180), because by his intromission the property of the principal has been withdrawn from the levy and restored to the debtor instead of being applied, as it otherwise would have been, to the payment of the debt, and thereby the original surety has been injured, and the second surety whose intervention has caused the injury has no equity to substitution for indemnity or contribution against the first. The same principle applies to sureties on appeal-bonds, bail-bonds, injunction-bonds, stay-bonds, prison-bounds bonds and the like obligations. See *Harnsberger and others* v. *Yancey and others* (decided recently at Staunton, not yet reported, and cases there cited).

So, by analogy, the sheriff, who by his act or the act of his deputy, in violation of his official duty, has suffered property, liable to levy and which has been levied on by him or his deputy, to be converted by the debtor to his own use, cannot be allowed, as against and to the prejudice of

creditors holding liens on the debtor's remaining property, to have indemnity thereout to the use of another by substitution (if substitution be admissible in any case), for what he has been compelled to pay on account of official delinquency or misconduct. The remaining fund ought not to be taken from these lien creditors by the agency of a court of equity and appropriated to the indemnity of one whose claim to priority rests on the title of a wrongdoer.

Several cases are cited by the learned counsel in the petition for appeal, but they give no support to the appellant's claim to relief.

*Pinckard* v. *Woods, supra,* has been noticed. *Enders, &c.* v. *Brune,* 4 Rand. 438, is the common case of the substitution of a surety to the liens, securities, and remedies of the creditor against the debtor. The only peculiarity is, that the surety bound himself for his principal by a separate obligation. But the court said in substance that circumstance made no difference. He was still a surety. The debt existed, notwithstanding the separate undertaking of the surety. That undertaking was at the request of the debtor, who, though he did not sign the obligation *with* the surety, continued primarily liable to the creditor. He was not released. The same principle was recognized in the case of *Harnsberger and others* v. *Yancey, supra.* *Kent* v. *Matthews,* 12 Leigh, 573, has no particular bearing on the questions raised in this case, and *Robertson* v. *Trigg's Adm'r and others,* 32 Gratt. 76, cited in argument, is the ordinary case of substitution of a surety to the rights and remedies of a creditor against a co-surety or the estate of a deceased co-surety, for contribution.

For the reasons which have been stated, I am of opinion there is no error in the decree of the circuit court, and that it should be affirmed.

DECREE AFFIRMED.