# CHARLESTON.

G. H. HUGGINS *et al., v.* U. M. FITZPATRICK *et al.*

(No. 5728)

Submitted September 21, 1926. Decided September 28, 1926.

1. SUBROGATION—

   One who has paid a debt at the request of the debtor, is not a stranger or volunteer in the transaction.  (p. 226.)

   (Subrogation, 37 Cyc. p. 378.)

2. SAME—*One Paying Debt Secured by First Mechanic's Lien, on Understanding That He Was to Have First Lien on Property, Held Entitled to Subrogation to Rights of First Lienor, as Against Intervening Incumbrance of Which He Was Innocently Ignorant.*

   When the debt so discharged was secured by a first lien on the debtor's property, and payment thereof was made upon an understanding with the debtor that the payor was to have a first lien on the property, the payor is entitled to be subrogated to the rights of the first lienor, in case of an

intervening incumbrance, of which the payor was innocently ignorant.  (p. 227.)

(Subrogation, 37 Cyc. p. 469.)

3.  SAME—*If First Lienor Improperly Released His Security, Such Release Will be Considered Invalid in Equity, and Lien Will be Restored for Benefit of Payor.*

If the first lienor in such case has improperly executed a release of his security, the release may be treated in equity as invalid, and the lien restored for the benefit of the payor. (p. 229.)

(Subrogation, 37 Cyc. p. 469.)

(NOTE:  Parenthetical references by Editors, C. J.—Cyc. Not part of Syllabi.)

Appeal from Circuit Court, Marshall County.

Suit by G. H. Huggins and another against U. M. Fitzpatrick and others to enforce a mechanic's lien.  From an adverse judgment, the defendant Buckeye Savings & Loan Company appeals.

*Reversed and remanded.*

*Jay T. McCamic* and *McCamic & Clarke,* for appellant.
*B. S. Honecker,* for appellees Conner and Kemple.

HATCHER, JUDGE:

This proceeding was brought in the circuit court of Marshall County primarily to enforce a mechanic's lien against the property of defendant Fitzpatrick.  There were several liens on that property, and this appeal involves the right of priority between the claim of defendants Conner and Kemple and that of defendant Buckeye Savings and Loan Company.

Fitzpatrick and wife executed four deeds of trust on his property in Marshall county.  The first encumbrance was given to secure to the Real Estate and Improvement Company the payment of $1,875.00.  It was dated July 29, 1919 and was recorded Aug. 22, 1919.  The second was executed to secure the Scott Lumber Company in the payment of $771.35.  It was dated April 26, 1920, and was recorded May 17, 1920. The third was executed to secure to Conner and Kemple the payment of $646.46.  It was dated July 30, 1920 and was recorded Aug. 7, 1920.  The fourth was given to secure to the

Loan Company the payment of $2800.00. It was dated Oct. 8, 1920 and was recorded Oct. 20, 1920.

The evidence regarding this last trust deed establishes that Fitzpatrick represented to the Loan Company that the liens of the Improvement Co. and the Lumber Co., respectively, were the only encumbrances on his property, and that the $2800.00 was advanced for the purpose of extinguishing the first two liens, and upon the representation by Fitzpatrick and the understanding of the Loan Co. that a trust deed to be given it by Fitzpatrick would become the first lien against his property. The Loan Co. made no investigation of Fitzpatrick's title, but relied on his statements, as well as like statements made by a representative of the Lumber Co. The Loan Co. paid to the Improvement Co. $1771.52, in full of its claim, and to the Lumber Co. $856.50, in satisfaction of its claim, and turned over the balance of the loan of $2800.00, to-wit, $171.98, to Fitzpatrick. The Improvement Co. executed a release of its deed of trust. The Lumber Co. executed no release, but turned over to the Loan Co. the note held against Fitzpatrick. No assignment of the claim of either the Improvement Co. or the Lumber Co. was taken by the Loan Co.

The Loan Co. claims the right in this suit to be subrogated to the priorities of the liens of the Improvement Co. and the Lumber Co., respectively, which it paid. The lower court denied this demand, and gave priority to the claims of Conner and Kemple.

Counsel for Conner and Kemple assume the position that the payments made by the Loan Co. for Fitzpatrick were voluntary and that subrogation is not applied in favor of a mere volunteer, but only where one has been compelled to pay money to protect his own rights. *McNeel* v. *Miller,* 29 W. Va. 480, *Feamster* v. *Withrow,* 12 W. Va. 611, and other authorities are cited. We cannot apply this argument or these authorities to this case, for the reason that the Loan Co. cannot be classed as a volunteer. "One is not a volunteer in a transaction where he has paid the money at the request of the person whose liability he discharges". 25 R. C. L. 1236.

"A person paying a debt or advancing money for the purpose, at the instance, solicitation or request of the debtor cannot be regarded as a volunteer, stranger or intermeddler, within the meaning of the foregoing rules". Note b of Freeman's Annotation on The Right To Subrogation, 99 Am. St. 495. "The doctrine (i. e., subrogation), is also justly extended, by analogy, to one who, having no previous interest, and being under no obligation pays off the mortgage, or advances money for its payment, at the instance of a debtor party and for his benefit; such a person is in no true sense a mere stranger and volunteer". Pomeroy's Eq. Juris. (4th Ed.) par. 1212, p. 2904. (See host of decisions cited under note d.)

Counsel also relies strongly on the principles announced in *Hoffman* v. *Ryan*, 21 W. Va. 415, as "peculiarly applicable" to the facts in this case. The *Hoffman* case, however, is easily distinguished from this case by the fact that Corothers, who sought in that case subrogation on money advanced to Ryan to make a certain payment, had full knowledge of other liabilities of Ryan which he, Corothers, expected to have to pay, "evidently regarding them as prior liens to the one he relied on". Notice of the junior lien is a most important factor in such cases. In *Atkinson* v. *Plum*, 50 W. Va. 104 (108), this court recognized the rule pronounced by Jones on Mortgages, Sec. 971, that when a new lien is substituted for an existing lien in ignorance of an intervening lien, the lien released because of ignorance may be restored, etc., by equity. But restoration of the released lien at the behest of the Traders Bldg. Assn. was refused in that case, because the Association as the opinion states, "was not ignorant of Atkinson's lien but had distinct knowledge of it * * * and acted with its eyes open to Atkinson's right".

In the present case the Loan Co. was ignorant of the intervening claim, it had no information thereof which would have put it on guard, and it acted with eyes closed to the rights of Conner and Kemple. Its ignorance was not due to negligence, but solely to the misleading statements of Fitzpatrick and the agent of the Lumber Co. No reason appears why the

Loan Co. should not have relied on these representations. Therefore no blame can be charged to it.

Counsel also quotes from Sheldon On Subrogation certain rules purporting to limit and restrict the equities of a third party who has paid a lien debt. The deductions of Mr. Sheldon were doubtless warranted from the decisions before him at the time he wrote. But the law of subrogation has been steadily expanding since the preparation of his book. A review of the present authorities impels more liberality than that expressed by Mr. Sheldon. "Equitable remedies * * * are distinguished by their flexibility, their unlimited variety, their adaptability to circumstances and the natural rules which govern their use. * * * The court of equity has the power of devising its remedy and shaping it so as to fit the changing circumstances of every case and the complex relations of all the parties." Pom. Eq. Juris. par. 109. In no branch of equity jurisprudence does this statement of Pomeroy find more complete confirmation than in Subrogation. "Since the doctrine of subrogation was ingrafted on English jurisprudence, it has been steadily expanding and growing in importance and extent in its application to various subjects and classes of persons. The original limitation of the rights to transactions between principles and sureties no longer exists, and the doctrine as now applied is broad enough to include every instance in which one person, not acting voluntarily, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter". 25 R. C. L. p. 1322-3. The authority last cited, in effect, challenges Mr. Sheldon's attempt to circumscribe the right of subrogation. It states that no general rule can be formulated which will afford a test of all cases, but that the right of subrogation must depend "upon the facts and circumstances of each particular case".

The facts and circumstances in this case are without complication. Appellant paid Fitzpatrick's debts, believing that its lien immediately succeeded that of the payees. Now, Conner and Kemple would step to a more secure position upon the footing prepared by the Loan Co. They would profit not

by their merit, but by the Loan Co.'s mistake. Their advances had been made to Fitzpatrick before the Loan Co. became his creditor. Fitzpatrick did not increase the security of Conner and Kemple by involving the Loan Co. in this affair. He simply transferred to the Loan Co. the several debts he owed the Improvement Co. and the Lumber Co. The risk of Conner and Kemple was in no wise heightened because his obligations were thus transferred. Therefore no injustice to them would follow the restoration of the original liens. They would merely occupy the same position they primarily acquired.

In discussing the right of subrogation in *Atkinson* v. *Plum, supra,* Judge BRANNON said: "Intention is the pole star in the matter. It is a matter of contract". In this case the intention of the Loan Co., and the contract with Fitzpatrick, were that it should have first lien on the property.

Upon the payment of the prior claimants the Loan Co. had the right to demand of the lienors assignments of their securities. The liens, in fact, no longer belonged to the payees. They but held them for the protection of the Loan Co. The release by the Improvement Co.—not shown to be at the request of the Loan Co., was unwarranted and invalid. *Bank* v. *Coal Co.,* 89 W. Va. 659 (663). Equity will reinstate the trust deed so released and will enforce the liens of the Improvement Co. and the Lumber Co. for the benefit of the Loan Co. "One who pays and discharges a prior lien at the request of the debtor, in ignorance of the existence of subsequent incumbrances, is entitled to be subrogated to the rights of the first lienor, notwithstanding his failure to make an examination of the records which would have disclosed the incumbrances. Nothing short of very culpable negligence will bar relief in these circumstances." *Hill* v. *Ritchie et al.,* 90 Vt. 318. "A. took a mortgage on the property of B. and advanced B. money with the express understanding that B. discharge certain prior mortgages on the property, and that A. have a first lien on the property. B. discharged the prior encumbrances. *Held,* A. was subrogated to the rights of the prior mortgagees, and not being a volunteer, was entitled to a first lien on the property as against a judgment creditor, of whom

A. had no knowledge, and was not negligent in not discovering, due to improper indexing of the judgment." *S. Cotton Oil Co. v. Napoleon Hill Cotton Co.,* 108 Ark. 555. "One who makes a loan to discharge a first mortgage, pursuant to an agreement with the mortgagor that he shall have a first mortgage on the same land to secure it, but there is at the time another mortgage on the land, of which the lender is ignorant, will be subrogated to the rights of the first mortgagee. His right to be subrogated in such case is not affected by the fact that the record shows a release of the first mortgage, where the position of the second mortgagee has not been changed because of the record showing such release." *Bank* v. *Bierstadt,* 168 Ill. 618, 48 N. E. 161. Among many other decisions directly in point are *Bruse* v. *Nelson et al.,* 35 Iowa 157, *Amick* v. *Woodworth,* 58 O. St. 86, *Emmert* v. *Thompson,* 49 Minn. 386.

The judgment of the lower court will therefore be reversed in so far as it gives priority to Conner and Kemple over so much of the claim of the appellant as is represented by its several payments to the Improvement Co. and the Lumber Co. The cause is remanded.

*Reversed and remanded.*