# Richmond

A. OBICI V. MARY S. FURCRON, ET ALS.

March 16, 1933.

Present, All the Justices.

The opinion states the case.

*James H. Corbitt,* for the appellant.

*Eastwood D. Herbert,* for the appellees.

HUDGINS, J., delivered the opinion of the court.

By deed dated June 26, 1925, and duly recorded in the clerk's office of the Corporation Court of the city of Norfolk, Pauline C. Scalco and her husband conveyed certain property to A. P. Grice, trustee, to secure a debt of $15,000, evidenced by fifteen notes for $1,000, each, payable to bearer at the office of Guaranty Title and Trust Corporation, Norfolk, Virginia. Two thousand dollars of the principal became due each year for four years, *i. e.,* on June 26, 1926, 1927, 1928 and 1929, the balance on June 26, 1930. Interest coupons, payable semi-annually, were attached to each note.

The Guaranty Title and Trust Corporation, by endorsement, guaranteed payment of the notes and interest coupons, upon condition that, at its option, it should be allowed twelve months from date of maturity within which to pay the principal. The notes, with this endorsement on each, were then sold by Guaranty Title and Trust Corporation to various parties.

On December 5, 1925, the same grantors conveyed the same property to James H. Corbitt, trustee, to secure A. Obici, in the event he was required to pay the sum of $7,500, evidenced by certain notes which he had endorsed for them.

When notes Nos. 1 and 2 became due the makers paid $500 in cash and executed two renewal notes, one for $1,000 and the other for $500, which matured June 26, 1930. On the days of maturity, or shortly thereafter, Obici acquired notes Nos. 3, 4, 5, 6, 7, and 8, and certain interest coupons detached from other notes.

On July 29, 1930, the property was sold by A. P. Grice, trustee, at which sale Obici became the purchaser at the

price of $11,500. After deducting the expenses of sale and unpaid taxes on the property, there was left for distribution the sum of $10,988. Obici claims that, either as a subrogee or as a purchaser of notes three to eight, inclusive, he was entitled to the same rights as the original note holders, and that under the terms of the deed of trust priority was given payment of the notes in the direct order of the dates of maturity; and further, that in the event the court was of opinion that there was no preference in the order of payment, then he was entitled to share equally and ratably in the distribution of the proceeds of sale.

Thereupon, the other note holders instituted this suit and enjoined the trustee from making distribution of the proceeds of sale until the rights of the interested parties could be adjudicated. The matter was referred to a commissioner in chancery, who reported that Obici was not a purchaser of the notes, nor was he entitled to subrogation in so far as the holders of the other notes were concerned, but as between the principal debtors and the general creditors he was entitled to subrogation. To this report Obici filed exceptions, which were overruled, and decree was entered sustaining the report. From this decree this appeal was allowed.

The material facts upon which the rights of the parties are to be determined are as follows: Shortly before notes Nos. 2 and 3 became due, Obici, through his attorney, made some inquiries of Guaranty Title and Trust Corporation concerning these notes, which matured June 26, 1927, and was informed that upon his payment to the corporation of $2,000 and the semi-annual interest on the total unpaid principal the notes, uncancelled, would be delivered to him. He was also informed that the holders of the unpaid notes would have a "right to suppose that the $2,000" then due had been paid. In the same letter this significant sentence is found:

"But you will understand that the holder of notes maturing in 1928, 1929, and 1930 would have a right to expect

that the notes maturing in 1927 had been paid when they fell due. And, therefore, that they would come ahead of the $2,000 which mature in 1927."

To this letter, Obici's attorney, on June 22, 1927, replied as follows:

"I am enclosing herewith Mr. A. Obici's check for $2,-435 payable to the Guaranty Title and Trust Corporation for one note of $2,000 executed by Pauline C. Scalco, and interest of $435 on the entire loan, due June 26, 1927. It is my understanding with your Mr. Dabney that this $2,000 note will be assigned to Mr. Obici by you and not marked paid. You can let me have the note duly assigned."

On July 27, 1927, the notes, with the guaranty of Guaranty Title and Trust Corporation cancelled, was delivered to Mr. Obici's attorney, but the interest coupons were marked paid and held by the corporation.

On June 27, 1927, Pauline C. Scalco and her husband conveyed the same property described in the previous deeds of trust to James H. Corbitt, trustee, to secure to Obici the sum of $2,435, the exact amount which he had paid to Guaranty Title and Trust Corporation just a few days prior thereto. With reference to this deed of trust the commissioner, in his report, has the following to say:

"While no evidence was introduced before your commissioner as to the ownership of said note and the amount due thereon, your commissioner was authorized and directed in writing by James H. Corbitt, attorney for Obici, to report that said debt has been cancelled, as appears from the letter returned with this report; and the original note marked 'cancelled' was filed before your commissioner. The said note and original deed of trust are also returned with this report.

"It should be observed in passing, that the said note and deed of trust were executed on the day after the maturity of principal notes Nos. 3 and 4, now claimed to be held by Obici, and the amount of said note is for the same amount that Obici claims to have paid at that time for said notes

Nos. 3 and 4, and interest to that date on the entire indebtedness."

It is clear from these facts that when these notes were delivered to Obici he accepted them with the distinct understanding that in the event it became necessary to sell the property under the deed of trust, the holder would not be entitled to share in the proceeds of sale until the notes subsequently maturing had been satisfied. This condition was imposed by the Guaranty Title and Trust Corporation, an endorser on all the notes, for its own protection and the protection of the other interested parties. To permit Obici, as holder of notes Nos. 3 and 4, to be subrogated to the rights of the original holders would be violating the conditions upon which he accepted the transfer of the notes, to the prejudice of other parties, the payment of whose debts are secured by the same instrument.

It seems that when notes 5 and 6 became due Obici was away from his place of business. His secretary, in compliance with a telephone communication, delivered a check to Guaranty Title and Trust Corporation for $2,375, the amount then due on these two notes and interest on the entire indebtedness. The notes and interest coupons were then cancelled, marked paid and delivered to the secretary. Obici now claims that this was a mistake, that his secretary should not have permitted the notes to be marked paid, but should have had them transferred to him uncancelled.

Between the time Obici acquired notes 3 and 4 and the time he acquired notes 5 and 6, under the circumstances above described, there was no other communication between the parties concerning this matter. If Obici's secretary made a mistake in paying the latter notes, Obici raised no objection to this method of acquiring them until it became apparent that sale of the property was necessary.

The payment of these four notes and the coupons representing the interest on the whole debt was made at the office of the corporation, the place of payment prescribed, and in the usual way. The corporation had no authority

from the owners, express or implied, to negotiate or pass title, it was only authorized to collect the amount due thereon; there was no evidence of an intent to sell. The corporation recognized this fact and took the precaution, in the first instance, to notify Obici that it would transfer notes 2 and 3 upon condition that in case of sale their payment would be subordinated to that of the notes subsequently falling due, and when it received the amount due June 26, 1928, it cancelled the notes and coupons before delivery. These facts, as the commissioner and the trial court found, clearly show payment and not purchase.

Notes 7 and 8, in the sum of $1,000, each, and interest coupons totalling $60, maturing June 26, 1929, were acquired by Obici from the owner, Dr. Ellis. It seems that Dr. Ellis, because of some rumors he had heard concerning the financial standing of Guaranty Title and Trust Corporation, requested the principal debtors to pay him the amount due on these notes direct. He was then informed by Scalco, or someone representing him, that Mr. Obici "was going to take care of these two notes." He thereupon communicated with Obici, who thereafter sent him a check for $2,315, which included both the principal and all interest then due. On receipt of this check, he delivered the notes, uncancelled, to Obici and paid $255, the amount of interest due on the other notes, to receivers for Guaranty Title and Trust Corporation, who, in turn, paid the same to appellees.

The commissioner held that in view of the circumstances preceding this transaction, the absence of affirmative evidence tending to show that Dr. Ellis intended to sell the notes to Obici, and the fact that the principal debtors informed the creditor, in effect, that Obici was going to pay these two notes for them, the transaction constituted payment of both the notes and the coupons. We see no reason to disturb this conclusion.

The deed of trust provides that the property should be conveyed "In trust, to secure to the holder or holders thereof, equally and ratably, and without preference or priority

the one over the other, except as to dates of maturity, the payment of fifteen (15) certain negotiable promissory notes, aggregating the principal sum of fifteen thousand dollars ($15,000.00), and of the interest coupons attached to each of said notes;" and in the event of sale, it authorized the trustee, after payment of the expenses and commissions of the sale, to pay "the debt aforesaid with interest thereon, or so much thereof as may then remain unpaid, and the balance, if any, to the said grantors or their assigns."

■■ It is usually held that in the absence of any provision in the deed of trust, or other instrument involved, where several notes are secured under the same instrument, they will be entitled to priority of payment in the order of their respective assignments. See *McClintic* v. *Wise's Adm'rs,* 25 Gratt. (66 Va.) 448, 18 Am. Rep. 694, and *Gordon* v. *Fitzhugh,* 27 Gratt. (68 Va.) 835. The provision quoted above clearly negatives any such intention in the present instrument.

Judge Staples, in *McClintic* v. *Wise's Adm'rs, supra,* dealing with a similar case, *i. e.,* one in which notes evidencing a debt are secured by one instrument and payable at different times, said: "No one ever supposes the effect of such an arrangement is to give priority of satisfaction to the first installments out of a common fund equally bound for the whole and every part of the debt."

■ This rule, however, is not always applied by the courts. See *Chatten* v. *Knoxville Trust Co.,* 154 Tenn. 345, 289 S. W. 536, 50 A. L. R. 537, and note. Obici is neither a purchaser nor an assignee of any of the notes or interest coupons. The appellees are the assignees of the now insolvent Guaranty Title and Trust Corporation and the notes held by them matured at the same time. We, therefore, concur in the finding of the commissioner and the chancellor that the holders of the unpaid notes are entitled to share ratably in the proceeds of sale.

Obici, the owner of a junior mortgage, has paid $6,000 principal of the $14,500 debt due by the principal debtors,

and $1,380 in interest on the entire indebtedness, and claims he is entitled to subrogation *pro tanto*. In other words, he contends he is entitled to be placed on an equality with the original creditors, without having discharged the entire debt secured by the senior mortgage.

It is well settled that when a junior mortgagee pays the entire debt secured by a prior mortgage he will be subrogated to the rights of the senior mortgagee. The contention here is that because the $15,000 debt was evidenced by fifteen notes, held by several parties, each note holder should be regarded as a separate mortgagee, and that payment of the entire amount due any of them entitled the junior mortgagee paying such obligation to all the rights such note holder had in the security, and that other creditors secured by the same lien have no right to object to subrogation under the circumstances.

As stated by Judge Woods in *Livingstain* v. *Columbian Banking & Trust Co.*, 77 S. C. 305, 57 S. E. 182, 184, 22 L. R. A. (N. S.) 442, 122 Am. St. Rep. 568: "'The doctrine of subrogation is a pure, unmixed equity, having its foundation in the principles of natural justice;' *Gadsden* v. *Brown* [Speers, Eq. (S. C.) 37], *supra*. As has often been said, it does not flow from any fixed law, but from principles of justice, equity, and benevolence. *Cheesebrough* v. *Millard*, 1 Johns. Ch. (N. Y.) 409 [7 Am. Dec. 494]. Obviously, therefore, subrogation will not be decreed in favor of one when it would defeat a legal right or overthrow an equal or superior right of another. * * * *American Bonding Co.* v. *National Mechanics' Bank*, 99 Am. St. Rep. 480 and 502."

Mr. Freeman, in a note to the above case (99 Am. St. Rep. 480), has this to say:

"Since subrogation is a creature of equity, it must be enforced with a due regard to the rights, legal or equitable, of others. It cannot be invoked so as to work injustice, or defeat a legal right, or overthrow a superior or perhaps even an equal equity, or displace an intervening

right or title." See *Combs* v. *Agee,* 148 Va. 471, 139 S. E. 265; *Morgan* v. *Gollehon,* 153 Va. 246, 149 S. E. 485.

Judge Burks, in *Sherman's Adm'r* v. *Shaver,* 75 Va. 1, 8, defines the doctrine thus: "The right of subrogation, broad and comprehensive as it is admitted to be, has its limits, and is by no means a matter of course, under all circumstances, even in favor of sureties. It is a creature of equity and *is never enforced to the injury or prejudice of the creditor, whose rights and remedies are sought to be used* (*Grubbs* v. *Wysors,* 32 Gratt. [73 Va.] 127, 131), *nor against* the superior equities of third persons." (Italics supplied.)

Under the terms of the deed of trust, the principal debtors agreed that in case they defaulted in the payment at maturity of any of the notes, or any interest coupon thereto attached, the creditors would have a right immediately to sell the property thereby conveyed. The debtors on June 26, 1927, paid neither the notes which then matured nor the semi-annual interest then due, but Obici paid these items for them. The record is silent as to who paid the semi-annual interest due on the indebtedness on December 26, 1927, and December 26, 1928, therefore it is presumed that the principal debtors made both of these payments. All other payments, including interest due on December 26, 1929, were made by Obici.

Obici, by making payment of the notes and all interest coupons as they became due, prevented complainants from exercising a legal right, given them by the principal debtors, to foreclose the deed of trust. By the payment of all interest due for the years 1927, 1928 and 1929 he treated the obligation secured by the first deed of trust as one debt. To permit subrogation under these circumstances would allow Obici to use rights and remedies of creditors at their expense. This he cannot do.

The case is not simply one in which a junior mortgagee is demanding subrogation where he has paid one or more of a series of notes, held by different parties, secured

by one instrument. He has done that, but he has done more. He has paid part of the sums due each note holder, he has prevented them from exercising a legal right, he has failed to discharge the whole debt due them, and yet he demands that a court of equity place him on an equality with creditors whose rights he has interfered with, to their prejudice. The reason for requiring payment of the entire debt before subrogation is stated by the Arkansas Court in *Barton* v. *Matthews*, 141 Ark. 262, 216 S. W. 693, 694, 9 A. L. R. 1594, quoting from *Bank of Fayetteville* v. *Lorwein*, 76 Ark. 245, 88 S. W. 919, 6 Ann. Cas. 202, where it is said:

"The right of subrogation cannot be enforced until the whole debt is paid, and until the creditor be wholly satisfied there ought to and can be no interference with his rights or his securities which might, even by bare possibility, prejudice or embarrass him in any way in the collection of the residue of his claim."

For three and a half years appellees were promptly paid the semi-annual interest on the due dates. They knew that under the terms of the deed of trust certain of the notes were required to be discharged each year. They assumed, and under the circumstances had a right to assume, that their common debtors were faithfully complying with the terms of the contract. Obici knew that this was their attitude, he had been so informed by the endorser on the notes; he made no attempt to purchase the notes or the interest coupons, but paid them at maturity. He knew if default was made in payment of any part of the principal or in any interest coupons as they became due that any one of the note holders could cause a foreclosure. He was careful to avoid the happening of such a contingency.

Under these circumstances, until the other creditors, whose obligations are secured by the same instrument, have been paid in full, it would be neither just nor equitable to permit Obici to collect out of the proceeds of sale of the securities the sums which he has paid for the principal debtors.

For the reasons stated, the decree of the trial court is affirmed.

*Affirmed.*

EPES, J., concurring in part.

I concur in the conclusion of the court except as to the two notes acquired by Obici from Dr. Ellis. As to those I am of the opinion that he is entitled to be subrogated to the rights of Dr. Ellis.