JULIAN PRICE, *Trustee, et al. v.* W. T. LOVINS, *Trustee, et al.*

(No. 8304)

Submitted May 14, 1936.  Decided June 16, 1936.

LITZ, JUDGE, dissenting.

*Peyton, Winters & Hereford,* for appellants.

*Marcum & Gibson* and *Via, Hardwick & Quinlan,* and *Fred M. Vinson,* for appellee Eugene Wallace.

KENNA, JUDGE:

This appeal is prosecuted from a decree of the Circuit Court of Wayne County by which that court failed to subrogate Jefferson Standard Life Insurance Company to the rights of certain prior lienors by trust deed against certain real estate located in the city of Kenova, and owned by L. W. Bowden and Eula Bowden. The theory of the Jefferson Standard Life Insurance Company in this court is (1) that it advanced the sum of $1500.00 to

the owners with the express understanding that it was to be secured by a first lien upon the real estate in question, and that since the money it advanced actually went to pay off and retire a part of the pre-existing liens against the land, it is entitled to be subrogated to the rights of such pre-existing lienors to the extent of the payment of its money for that purpose; and (2) that since a part of the money advanced by it was used to retire the first assigned of a series of notes secured by the pre-existing deed of trust, it is entitled to have a decree placing the first note to be assigned in preferential position with reference to priority over the notes of the same series that were later assigned. The Circuit Court of Wayne County held against both these contentions and it is from the decree fixing the priorities otherwise that the Jefferson Standard Life Insurance Company prosecutes this appeal.

On July 6, 1927, W. T. Wallace and T. B. Greenslait conveyed to L. W. Bowden and Eula B. Bowden certain property in the city of Kenova. The unpaid purchase money in the transaction was represented by one note for $700.00 due in twelve months and eighty notes of $50.00 each payable monthly. These notes were secured by a deed of trust made by the Bowdens to W. T. Lovins, trustee, bearing even date with the conveyance.

On July 7, 1927, the next day after the conveyance and deed of trust, W. T. Wallace indorsed the $700.00 note and seventy-nine of the $50.00 notes with the firm name of Wallace & Greenslait by himself, and took them to the Farmers & Merchants Bank of Catlettsburg, Kentucky. He discounted the $700.00 note outright to the bank and deposited the seventy-nine $50.00 notes with the bank as collateral security upon his own indebtness.

In March, 1928, W. T. Wallace and Greenslait had a settlement of their partnership affairs in the course of which Wallace withdrew from the Farmers & Merchants Bank of Catlettsburg $2,000.00 or more, face value, of the Bowden $50.00 notes that he had deposited there as collateral and turned them over to Greenslait.

In March, 1928, the same month in which he acquired them, Greenslait sold forty-four of the $50.00 Bowden notes to Eugene Wallace. These notes matured from sixteen to fifty-nine months from date, and all but eighteen of them had been paid at the time this suit was instituted.

On September 9, 1930, L. W. Bowden and Eula B. Bowden having previously applied for a loan of $1500.00 from the Jefferson Standard Life Insurance Company, a deed of trust to Price, trustee, upon the same real estate that had been conveyed to Lovins, trustee, securing Jefferson Standard Life Insurance Company in the amount of $1500.00, was recorded in the office of the clerk of the county court of Wayne County. This deed of trust is dated August 19, 1930.

It appears from the proof that the Jefferson Standard Life Insurance Company had employed an attorney at law of Huntington, West Virginia, to examine and report upon the state of the title to the land that the Bowdens intended to convey as security. Their attorney had reported certain unpaid taxes and the prior trust deed. He was instructed by his client that it would only make the loan upon condition that it could procure as security a first lien upon the land in question. He got in touch with W. T. Wallace and with the Farmers & Merchants Bank, and was assured that W. T. Wallace was the owner of all of the Bowden notes outstanding, a part of which were held by the bank as collateral security. The company's attorney did not discover that a part of the unpaid Bowden notes were at that time held by Eugene Wallace. He does not seem to have inquired of the Bowdens as to the number of their notes that remained unpaid.

On October 6, 1930, a partial release or waiver, signed by W. T. Wallace and the Farmers & Merchants Bank, was recorded in the office of the clerk of the County Court of Wayne County, West Virginia. This release was dated September 29, 1930, and it recites that W. T. Wallace is the owner and holder of all of the notes secured by the trust deed to W. Lovins, trustee, and that the Farmers & Merchants Bank is the holder of a part of them as col-

lateral security only. The release waives priority in favor of the deed of trust securing the Jefferson Standard Life Insurance Company in their $1500.00 loan to the Bowdens.

The money advanced by the Jefferson Standard Life Insurance Company was sent to the company's attorney in the form of a check made payable to him and L. W. Bowden jointly. It seems to have been disbursed about the first of October, and enough was paid to the bank to discharge the $700.00 note that had been transferred outright to it. The balance of the money seems to have been disbursed by W. T. Wallace, who paid $413.20 to Eugene Wallace, and this sum was applied to retire a part of the Bowden notes held by Eugene Wallace. After this money was applied by Eugene Wallace, he still had eighteen of the Bowden notes in his possession unpaid.

The foregoing facts were developed in evidence upon a bill of complaint brought by the Jefferson Standard Life Insurance Company seeking to enjoin the enforcement of the deed of trust made by the Bowdens to Lovins, trustee, at the instance of Eugene Wallace. The theory of the bill of complaint is that the notes held by Eugene Wallace either had been paid or were in fact not secured by the trust deed made to Lovins; that at the time of taking its trust deed, the Jefferson Standard Life Insurance Company had procured a release signed by the holders of all of the outstanding notes secured by that trust deed and that therefore its lien was the first lien upon the property. The bill of complaint does not seek relief upon the theory of subrogation. It seeks relief on the theory that Eugene Wallace, who was insisting upon the foreclosure of the trust deed made by the Bowdens to W. T. Lovins, trustee, was not the holder of any of the notes thereby secured prior to the time of the release by W. T. Wallace and the bank. The answer of Eugene Wallace simply makes denial of these allegations of the bill of complaint, sets up the fact that he is such holder of eighteen of the notes secured by the Lovins trust deed and that as such he has a right to demand the foreclosure thereof.

Upon the issues thus made up, the proof was taken, and the final decree entered.

There can be no decree without allegations upon which it may be based. *Gilmore* v. *Matoaka Grocery Co.*, 117 W. Va. 377, 185 S. E. 771. This rule specifically applies where relief by way of subrogation is sought. *Hemenway* v. *Cunningham*, 113 Me. 559, 92 Atl. 897; *Cooper* v. *Sagert*, 111 Ore. 27, 223 P. 943; *Conn. Fire Ins. Co.* v. *Williams*, 130 Okla. 15, 264 P. 881; 25 R. C. L. 1395. Inasmuch as the bill of complaint before us contains no averments upon which subrogation could be decreed and contains no prayer, other than the prayer for general relief, that would justify that sort of a decree, under ordinary circumstances we would be obliged to decline to consider the case here upon the theory of subrogation. However, considering that the parties evidently tried the case and argued and submitted it in the trial court upon this theory and have argued it, without objection, and submitted it in this court likewise upon the theory of subrogation, we have concluded that the case offers a proper instance in which, if the theory of subrogation can actually be sustained upon the proof, this court should reverse the decree and remand the cause with leave to the plaintiff to amend its bill of complaint. The question, then, is, does the proof sustain the theory of subrogation advanced by the plaintiff in this court? The plaintiff below urges here that it is entitled (1) to have reinstated for its benefit the lien of the Farmers & Merchants Bank which its money paid off, and for which it procured a release or waiver giving it the first lien ahead of the indebtedness of the bank; and (2) that it is entitled to have reinstated for its benefit the notes held by Eugene Wallace which the $413.00 of its money retired. Both of these contentions are advanced upon the theory of subrogation followed in *Huggins* v. *Fitzpatrick*, 102 W. Va. 224, 135 S. E. 19. The second point of the syllabus of that case is as follows: "When the debt so discharged was secured by a first lien on the debtor's property, and payment thereof was made upon an understanding with the debtor that the payor was to have

a first lien on the property, the payor is entitled to be subrogated to the rights of the first lienor, in case of an intervening incumbrance, of which the payor was innocently ignorant." At page 227, Judge Hatcher, who wrote for the court the opinion in the *Huggins* case, makes it perfectly plain that the right of subrogation, under the circumstances with which he was dealing, depends upon the ignorance of the person advancing the money of the intervening lien, protection against which he seeks by subrogation. Judge Hatcher cites and quotes from *Hoffman* v. *Ryan,* 21 W. Va. 415, and *Atkinson* v. *Plum,* 50 W. Va. 104, 40 S. E. 587, 58 L. R. A. 788, in both of which cases, subrogation was refused because of the fact that the parties seeking it were fully informed as to the intervening lien that was to be surmounted by the subrogation sought. In the case at bar, there can be no question but that the Jefferson Standard Life Insurance Company had full knowledge of the prior deed of trust made by the Bowdens to W. T. Lovins, Trustee. Not only was this instrument spread upon the public record, but it was there actually discovered and reported by the attorney representing the life insurance company who, at its instance, examined the public records. Since the Jefferson Standard Life Insurance Company must be held to have gone into this transaction with its eyes open and armed with full information concerning the existing liens upon the property, it is not in position to complain that it is being treated inequitably if it did not receive a first lien upon the property. If it desired a first lien, it was its duty, knowing of the first deed of trust already existing upon the property, to seek out the holders of all of the outstanding notes secured by that deed of trust and to procure from them releases or waivers of their liens. *Kelly, Conservator,* v. *Bank of Mount Hope,* 117 W. Va. 260, 185 S. E. 215. According to the bill of complaint, this is exactly what it sought to do. But it stopped short of full diligence in this respect, being content to rely upon the assurances of W. T. Wallace and of the bank. Eugene Wallace held

notes that it did not discover of which it might easily have known by inquiry of the Bowdens or by requiring that the notes which had been paid be exhibited. So, on the principle of prior knowledge of the existing incumbrance sought to be surmounted by the subrogation prayed, we are of the opinion that the case of the plaintiff below necessarily falls.

A further reason against decreeing subrogation in the case at bar is the fact that the entire debt to the security for which the Jefferson Standard Life Insurance Company seeks to be subrogated was not discharged. It seems to be a well settled principle of law of subrogation that subrogation *pro tanto* will not be allowed where only a part of the debt has been paid and where the creditor may, by any possibility, be embarrassed in the collection of the remainder of his debt. He cannot be compelled, after accepting what he thought to be a payment and full discharge of a part of his debt and after having the security for the unpaid part of his debt thus increased, to surrender the advantage the payment has given him and to divide his security with one who may prove hostile to his interests. See the annotated case of *Obici* v. *Furcron,* 160 Va. 351, 168 S. E. 340, 91 A. L. R. 848; and prior annotations cited at page 855. See also *Brown* v. *Thompson,* 99 W. Va. 56, 128 S. E. 309. Here, it is perfectly clear that the entire debt of Eugene Wallace was not paid off. So that under this rule, subrogation to the lien securing that debt could not be decreed. As to the Farmers & Merchants Bank, the same is true. The note owned by that bank outright was discharged in full, and its lien was released as to the indebtedness of the Jefferson Standard Life Insurance Company. However, a number of unpaid notes held by it as collateral security for the indebtedness of W. T. Wallace remained in its hands and were not paid at the time the suit was brought. We see no valid distinction to be drawn under the rule in question between that part of the notes that the bank owned outright and that part that it held as collateral security. Its lien was equally important in the

two cases, and we are of opinion that the same equitable principles should control.

We are of opinion to affirm the decree of the Circuit Court of Wayne County.

*Affirmed.*

LITZ, JUDGE, dissenting:

I cannot agree with that part of the opinion holding that the insurance company is not entitled to subrogation because it accepted the representation of W. T. Wallace, that he and the bank were the owners of all the outstanding notes secured by the first deed of trust, without instituting an investigation to determine the truth of the representation. Subrogation was allowed in *Huggins* v. *Fitzpatrick*, 102 W. Va. 224, 135 S. E. 19, where the subrogee advanced money to pay off first liens on real estate upon the representation of the debtor that there were no other liens on the property, notwithstanding the public records disclosed the falsity of the statement. It is submitted that under the rule applied by the court, subrogation would be impossible in most cases for the reason that if the subrogee is cognizant of subsequent liens, he is not entitled to subrogation, and if he is bound to know the facts, the same result would follow.