### Craig, et al. v. Wiley's Administrator, et al.

(Decided January 16, 1920.)

#### Appeal from Carlisle Circuit Court.

Bills and Notes—Payment—Finding of Chancellor—Evidence—Sufficiency.—In an action to recover on two notes, evidence considered and held not to sustain the plea of payment, but to show a balance due on each note.

BENNETT, ROBBINS & ROBBINS for appellants.

JOHN E. KANE for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

On May 8, 1895, E. O. Reid & Son sold to H. L. Wiley a stock of merchandise at Arlington for the sum of $7,994.22. For the purchase price Wiley executed to Reid & Son four promissory notes, one for $1,920.81 due September 1, 1895, one for $1,920.81 due December 1, 1895, one for $2,074.47 due in one year, and the last for $2,228.13 due in two years. The four notes were secured

by a mortgage on the stock of goods and also on several houses and lots. The first two notes were paid and cancelled. In order to secure the last two notes Wiley, on January 6, 1896, executed another mortgage on a lot of land, the mortgage stating that there was then due on the last two notes the sum of $3,183.85. E. O. Reid died in September, 1899. Wiley died in 1911. On May 1, 1912, E. E. Reid, the surviving member of E. O. Reid & Son, brought suit against H. L. Wiley's administrator and others to recover the balance due on the $2,074.47 and the $2,228.13 notes and to enforce the mortgage lien by which the notes were secured. The defendants pleaded payment, limitation and other defenses. During the pendency of the action E. E. Reid died, and the action was revived in the name of Daisy Ellen Reid Craig, the executrix and sole devisee of E. E. Reid. The case was referred to a special commissioner, who reported that the notes sued on had been paid and that there was a balance due from Reid & Son to Wiley. On final submission the exceptions to the commissioner's report were overruled and judgment rendered dismissing the petition. Plaintiff appeals.

The principal parties to the transactions involved in the action died without testifying and the evidence consists of account books, letters, receipts and other documents found in the possession of the parties. In addition to a written agreement by Wiley to keep the merchandise insured for the sum of $4,000.00, and an inventory showing the value of the goods to be $7,911.21, the material exhibits are as follows:

"For and in consideration of the note of Geo. E. Petty, for the sum of $775.00 at 8 per cent interest from date due and payable twelve months after date executed this day to E. O. Reid and the further consideration of the following lands, to-wit: (Here follows description of the various tracts of land) making a sum total of $1,280.13 figured at $2,985.00 all of which land said Geo. E. Petty agrees to convey to E. O. Reid with covenants of general warranty and in consideration of the above I have this day sold unto Geo. E. Petty an undivided one-half interest in a stock of merchandise consisting of fixtures, dry goods, notions, gents' furnishing, coats, hats, caps, boots and shoes and all goods of any kind and character belonging to the stock now being run in the storehouse of H. L. Wiley in the town of Arlington,

Kentucky, said stock is to be controlled and run by E. O. Reid until the deeds to said land are received and after which time said stock is to be moved by said E. O. Reid and Geo. E. Petty to Searcy, Arkansas, and run by them with a view to selling out the entire stock by mutual agreement on said sale and not run nor put up in Searcy with a view to continuing or keeping up a partnership business unless by further agreement.

"Arlington, Kentucky, this December 15th, 1896.

(Signed) E. O. Reid,

Geo. E. Petty."

"Deed from Geo. E. Petty and son, C. Petty.to the above described lands received dated December 17, —96, before Geo. T. Petty, J. P.

"E. O. R."

On "stock and cash book" from October 26, 1896, kept by H. L. Wiley, appears the following item:

"Feb. 13/97. By note of date May 8/95, due May 8/97, to be delivered to Wiley as of May 8/97, $2,228.13."

"March 5, 1897.

"E. O. Reid,
      Clinton, Ky.

"Sir:—

"Your letter got in this ev. will come over tomorrow or Sunday, but can see no use of me coming over there, as we will have to do whatever is done here, or by mail, proximating the note we owe to Earnest and the money you have advanced on debts of H. L. Wiley & Co. at 6,150.00 and letting the Pettie matter but 3,760.00 and putting out goods enough to make 2,000.00 additional credit on those two items would leave 390.00 or thereabouts, and about 1,500.00 in goods to put in Carman hands on commission, out of which the above bal. could be paid, and for your assistance, if any assistance it be, we could give note for that balance and fix it so we could meet it and you could use it making it in 2 or three installments. The Flege note & co. on the small mortgage note, and then we have the note 2,228.00, not yet due to contend with. Figuring that the notes and acts will pay the Cairo and Mayfield notes, and if we can arrange the matters in this way and succeed in procuring credit in the market will soon pay you out. If you will let us have the shoes, ½ the hats and ½ the dry goods and dry goods notions on something after the

above plan, we can put your goods for the present in the back room, and keep them in showing shape or pack them in boxes after we get some new goods in to get boxes. If you are favorable to this idea write me, so that can see Gus. What do you think of making stile of firm, Carman & Wiley, as to better than a new name entirely. We can arrange for about 500.00 cash to put in new stuff. Write me.

"Yours,
"H. L. WILEY."

"This is to certify that in the transactions of H. L. Wiley and E. O. Reid under the firm name of H. L. Wiley & Co., that H. L. Wiley received all benefits from said concern and was to settle all debts, said E. O. Reid having no further interest than to get his money back and interest, and it now appears that there is one note left and due Alexander County National Bank for $400.00 due on or about January 11th, '98, signed by H. L. Wiley & Co., which it is my duty to pay off, and if there are any other debts due by said firm of H. L. Wiley & Co., it is my duty to pay off same out of my own effects, further, in 1896, E. O. Reid took in trust the stock of goods of H. L. Wiley & Co., to further settlement and close up said business, and said E. O. Reid has disposed of said stock of merchandise and settled with me in full satisfaction for all merchandise, notes and accounts, etc., turned over to him by me, the whole of it being under my supervision all the while, the last transaction being the goods moved to Clinton, and the purchase of safe now in my storehouse at Arlington which is fully settled for and paid, Jan'y/98.

"H. L. WILEY."

"Clinton, Ky., April 11, 1899.

"H. L. Wiley.

"Dear Sir:—Enclosed find your note, which please write the word from, before the words date until paid so as to leave it clear to bear interest from date until paid. I have credited it on the note of yours, dated May 8th, '95, $2,074.47 dollar note, which likes about 30 dollars I reckon of paying it off. I credited stating with same liens reserved that the old note holds.

"I suppose without looking at the deed that the word 'from' added will correspond with the deed. See if it does. I also enclose you the note you executed to Payne

signed by myself as security. The above will cover your receipt. The above note referred to, to be changed calls for $441.25/100 bearing date Feb. 4th, '99, due two years after date and the credit of same on H. L. Wiley note due E. O. Reid & Son, bears same date. I have written this in a hurry, but guess it can be understood and interpreted by an Arlington lawyer, whether a N. Y. one can or not. Return the note at once. That Ernest can file it with my papers and get the matter off of file.
"Yours truly,
"E. O. Reid.

"P. S.—Write me at Heber will leave tonight."

"Received of H. L. Wiley three notes against James E. Golston for three hundred and twelve 50/100 dollars each aggregating nine hundred and thirty seven 50/100 dollars with interest from date which notes I agree to account for on settlement between myself and said Wiley, these notes being land notes.

"This April 30/1901.
                                    "E. E. Reid."
"The note ............................................... 38.08
Int. to April 30th, '01 ........................... 7.40
                                              _____
                                               45.48

"This note paid out of James E. Gholson notes—3— 312.50 notes making total of 937.50, all of which is credited on notes of H. L. Wiley, this note being retained by agreement between me and H. L. Wiley settled as of April 30th, 1901.
                                    "E. E. Reid."

"Three notes of James E. Gholson of $312.50 each making total of $937.50, credited to H. L. Wiley on all notes this note $257.25 which was security on and the balance of the 937.50 is credited on other notes and statement attached all this agreed to by H. L. Wiley, and I am to hold note showing how paid.
                                    "E. E. Reid."
"Note H. L. W. ....................................... 469.08
Note $38.08 int. $7.40 D. L. W. & Co....... 45.48
Note $257.25 pd. Nat'l  Bk.  Mayfield
    which I am security on H. L. W......... 257.25
Amt. credited on 2,228.13 note H. L. W.   165.69
                                              _____
                                               937.50

"Total amount of James E. Gholson notes for land in Hickman county, Ky. Above list shows when same was credited and by agreement between H. L. Wiley and me just when this amount was to be settled as of April 30th, 1901, date of Gholson notes.

"E. E. REID."

"Arlington, Ky., Sept. 18, 1889.

"Earnest E. Reid,
        Clinton, Ky.

"Dear Sir:

"You have my profound sympathy in the loss of your father, never was more surprised as I had a letter a few days ago saying he was as well as usual, and had not heard he was sick. Would suggest that as a legal proposition that you continue the business in the same firm name without any change. You will find this to be best for many reasons. If there is any matters in Arkansas that needs looking up, any matters that needs adjusting down there, I can and will help you in any way I can. I expect that I can do you some good in the Ark. affairs and as I am owing you all and if you think you can use me in looking up any matter, either in Ark. as I went with him over the Ark. land carefully once, I will serve you as best I can. Let me hear from you soon.

"Yours,
                "H. L. WILEY."

In support of the finding of the chancellor that the two notes sued on had been paid, the argument is as follows: The stock of merchandise for which Wiley executed his notes to Reid & Son on May 8, 1895, amounted to $7,994.22. The first two notes of $1,920.81 each were satisfied before January 6, 1896. On that date the second mortgage was executed, showing a balance due on the stock of merchandise of only $3,183.85. Some time during the year 1896, E. O. Reid took the stock of merchandise in trust for the purpose of liquidating the balance of the indebtedness due by Wiley. An inventory made on October 26, 1896, showed that the stock of goods amounted to $7,911.21. On December 15, 1896, E. O. Reid traded a half interest in the stock of goods to George E. Petty for a note for $775.00 and land valued at $2,985.00, making a total of $3,760.00. Petty received the goods and paid the consideration to Reid. The stock of goods and safe at Arlington were sold to E. O. Reid previous to

January 8, 1898, and moved by him to Clinton. The item on the "stock and cash book" showed that the note for $2,228.13 had been paid. The receipt given by Wiley on January 8, 1898, showed that the only debt known to the parties to be due by H. L. Wiley & Company was a note for $400.00, and that E. O. Reid had disposed of the stock of merchandise and settled with Wiley for all the merchandise, notes, accounts, etc., turned over to him by Wiley. This receipt shows that the parties made a complete settlement. It does not appear that Wiley & Company were otherwise indebted to Reid & Son, and the only way that Reid & Son could have settled with Wiley for the goods sold was by paying the amount of the purchase on the notes in question.

We cannot construe the entry of February 13, 1897, on the "stock and cash book" as evidence of the payment of the note for $2,228.13, for the very simple reason that Wiley's letter of March 5, 1897, which was written after the entry was made, and in which appears the following: "And then we have the note 2,228.00 not yet due to contend with," shows very plainly that the note was not paid. Nor is the argument based upon the contention that Wiley was not otherwise indebted to Reid & Son, and that the Reids could not have paid Wiley for the goods sold to Petty in any other way than by satisfying the notes in question, entitled to much consideration. It clearly appears that there were two $2,500.00 notes executed by Wiley & Company to the Reids, besides other notes. Wiley's letter of March 5, 1897, shows exactly how the Petty transaction was settled. In that letter Wiley says, "Proximating the note we owe to Ernest and the money you have advanced on debts of H. L. Wiley & Co. at 6,150.00 and letting the Pettie matter but 3,760.00 and putting out goods enough to make 2,000.00 additional credit on those two items would leave 390.00 or thereabouts." This shows that the firm of H. L. Wiley & Company was indebted to Ernest and also to E. O. Reid for money advanced on the debts of H. L. Wiley & Company in the sum of about $6,150.00. The amount received from Petty by Reid was $3,760.00. In using the words "letting the Pettie matter but 3,760.00," Wiley meant that the Petty item of $3,760.00 should be a set-off against the $6,150.00 to that extent. That this is the effect of the language used is clearly

shown by adding the $3,760.00 and the $2,000.00 and deducting the sum from the $6,150.00, thus obtaining the balance of $390.00 stated in the letter. In other words, this letter leaves no doubt that Wiley & Company were indebted to the Reids for money advanced on their debts, and that the consideration which the Reids received from Petty was credited on this indebtedness and not on the indebtedness represented by the original purchase notes. It must also be remembered that while the two first notes originally executed by Wiley were cancelled and found among his papers, the two notes sued on were still in the possession of the Reids. Furthermore, the receipt given by Wiley to E. O. Reid on January 8, 1898, cannot be construed as a full settlement of all transactions between them for the following reasons: On April 11, 1899, Reid wrote to Wiley and stated that a certain note for $441.25 was credited by him on the note for $2,074.47 dated May 8, 1895, and that after this credit was made there remained a balance due of about $30.00. Endorsed on the back of the $2,074.47 note sued on is the credit referred to in Reid's letter. The receipt, given by E. E. Reid on April 30, 1901, for the three James E. Gholson notes for $312.50 each, shows that Reid was to account for these notes in his settlement with Wiley. On the same date the note for $2,228.13 was credited by the sum of $165.69, the amount due H. L. Wiley on the James E. Gholson notes. In addition to all this, H. L. Wiley's letter of condolence to E. E. Reid, dated September 18, 1899, contains the following language: ''I expect that I can do you some good in the Ark. affairs, and as I am owing you all,'' etc. Manifestly, Reid would not have been making credits on the notes in question long after that time if they had been settled by the agreement of Jan. 8, 1898, nor would Wiley have been writing to Ernest Reid that he was then indebted to him. We therefore conclude that the plea of payment was not sustained. On the contrary, the evidence shows that there was a balance of $30.00 due April 11, 1899, on the note for $2,074.47, and that there is still due on the $2,228.13 note the full amount thereof, subject to a credit of $165.69 paid April 30, 1901.

Since plaintiff's right to a lien on the land covered by the mortgage and now owned by certain defendants was not passed on by the chancellor, we refrain from expressing an opinion on the question and remand the case with directions to enter judgment in conformity with

this opinion, and determine whether plaintiff has a lien on the mortgaged property to secure the amount adjudged to be due.

Judgment reversed and cause remanded for proceedings consistent with this opinion.