## Probst, et al. v. Wigginton.

(Decided March 19, 1926.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1.  Subrogation—Doctrine of "Subrogation" is Not Inflexible, But is Applied to do Justice in Particular Case, and Includes Every Instance in which One who is Not Mere Volunteer Pays Another's Debt.—Doctrine of "subrogation" is not inflexible rule of law or equity, but is creature of equity, applied to do justice in particular case where law is powerless, and is broad enough to include every instance in which one person who is not mere volunteer pays debt which ought to be paid by another.

2.  Subrogation—Subrogation Must be Enforced with Due Regard to Rights of Others, and Cannot be Invoked to Work Injustice or De-

feat Legal Right or Superior Equity or Displace Intervening Right or Title.—Subrogation, being creature of equity, must be enforced with due regard to rights of others, and cannot be invoked to work injustice, defeat legal right or superior equity, or displace intervening right or title.

3. Subrogation—Where Mortgage Included Parcel Previously Conveyed to Defendant by Warranty Deed, Mortgagees Held Not Entitled to have Release of Prior Mortgage on such Parcel Canceled Under Doctrine of Subrogation.—Where vendor, who by warranty deed conveyed mortgaged parcel to defendant, subsequently mortgaged all her realty, including parcel conveyed, to plaintiffs, to obtain money to pay mortgages thereon, held that plaintiffs were not entitled to have release of mortgage canceled under doctrine of subrogation, since defendant had merely received what he was entitled to under his deed, and his position would be altered for the worse thereby.

BEN F. GARDNER for appellants.

L. R. CURTIS for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Susie Becker owned several parcels of real estate located in Jefferson county, upon which there were mortgages to one Walter Uri to secure various debts due him. One of the parcels consisted of one acre and upon which Uri had a mortgage for $655.00. She sold that lot to the appellee and one of the defendants below, Allen Wigginton, for a valuable consideration paid by him. That conveyance was made on July 31, 1923, and the deed contained a general warranty clause and a covenant against liens and incumbrances, although according to the pleadings Wigginton had actual knowledge of the existence of the mortgage as well as constructive knowledge from its recording in the county clerk's office. On October 12, 1923, and after Wigginton's deed was recorded, Susie Becker executed and delivered to appellants and plaintiffs below, Adam Probst and Teresa Becker, a half-brother and half-sister, a trust deed on all of the parcels of real estate which she owned including that purchased by defendant, Wigginton, the consideration of which was $7,632.19, then and there advanced to her by the vendees in that deed and with which she agreed to discharge and pay off all of the mortgages to Uri including the one on the lot conveyed to Wigginton on July 31, prior thereto. She did pay off that mortgage and Uri released it on the margin of the record in the county court clerk's office.

Some time after plaintiffs obtained their deed they filed this action in the Jefferson circuit court against their vendor, Wigginton, and Uri and in their petition they alleged that the deed to them was in reality a mortgage to secure them in the money they advanced to Susie Becker and it was for the specific purpose of enabling her to pay Uri all of his debts including the one on the lot she conveyed to Wigginton; that at the time, it was agreed and understood that plaintiffs might sell the land at private sale and with the proceeds pay themselves the money and interests they advanced and all accruing costs, and the balance if any, to their vendor; that at the time they took their deed and advanced their money they did not have actual knowledge of the deed executed to Wigginton, and that through the fraud of their vendor and mistake on their part they were induced to advance her the money with which to discharge Uri's mortgage on the lot theretofore conveyed to Wigginton, and they prayed that the release of that mortgage be cancelled and it be reinstated and that they be subrogated to the rights of Uri therein, and that they be adjudged a superior equity to Wigginton in that lot to the extent of the mortgage upon it. A demurrer filed by defendant to the petition was sustained, and an amended petition was filed, the substance of which was that Wigginton did not pay a cash consideration, or that all of it was not so paid, but that some if not all of the consideration consisted of other transactions between him and Susie Becker but which in law constituted a valuable consideration. The demurrer was renewed to the petition as so amended and sustained, and plaintiffs declining to plead further, their petition was dismissed and they have appealed to this court.

The doctrine of legal subrogation is not a fixed and inflexible rule of law or equity and it does not owe its origin to statute or custom, since it is a creature of equity, invented and applied in order to do justice in a particular case and under particular state of facts where the law is powerless in the premises; and it is broad enough to include every instance in which one person who is not a mere volunteer pays a debt which in justice, equity and good conscience ought to be paid by another. That general definition is the one given by all text writers and courts, some of which are, Mr. Freeman's annotations to the case of American Bonding Co. of Baltimore v. National Mechanics Banks of Baltimore, 99 Amer.

St. Rep. 466, annotations beginning on page 474; 25 R. C. L. page 1311, para. 1; Flannary v. Utley, 9 K. L. R. 581; Allen v. Perrine, 103 Ky. 521; Farmers Nat. Bank v. Farmers and Traders Bank of Maysville, 159 Ky. 141; Ford v. Jones, 174 Ky. 252; Illinois Surety Co. v Mitchell, 177 Ky. 367; Landrum v. Landrum, 186 Ky. 755, and other domestic cases referred to in those opinions. With the same unanimity it is held that, since the doctrine of subrogation is a creature of equity it must be enforced with a due regard to the rights, legal or equitable, of others and that it can not be invoked so as to work injustice or to defeat a legal right or overthrow a superior equity or to displace an intervening right or title. See cases and authorities, *supra,* and page 480 of the cited annotation. That qualification is thus stated in the volume of R. C. L. referred to, page 1321: "Subrogation is the creature of equity, and will not be permitted where it will work injustice to the rights of those having equal or superior equities, or where it will operate to defeat a legal right;" and on the next page the text says: "The doctrine of subrogation will not be applied where innocent persons will be injured."

The chief case relied on by learned counsel for plaintiffs is that of Farmers and Dovers Insurance Co. v. German Insurance Co., 79 Ky. 598. But the learned chancellor who rendered the judgment below, and with whom we agree, did not think the principles announced in that opinion applicable to the facts of this case. In substance the facts there were, that a first mortgagee who, of course, was superior to a second one, renewed his debt after the second mortgage was given and took a new mortgage to secure it and satisfied his first one. That transaction, of course, rendered his second acquired lien subsequent to that held by the second mortgagee and made the latter's lien *prima facie* superior. The first mortgage in an action to enforce the liens asked that the release of his first mortgage be cancelled, since it was made under a mistake on his part as to the existence of the second mortgage which became, as we have seen, superior to claimant's lien because of the release so mistakenly made. The court sustained the contention, since the facts brought the case directly within the doctrine of subrogation, and in enforcing it no intervening or other rights of other parties were in the least interferred with or in any wise disturbed.

The facts in the instant case are clearly different from those appearing in that one. Here Wigginton had an equity, arising from the warranty and covenants in his deed, to have his paid for unincumbered title rendered so in fact, by having the mortgage held by Uri on the land conveyed to him paid and satisfied. His vendor, who had obligated herself to do that, procured the money from plaintiffs and complied with her warranty contract with Wigginton. He thereby obtained what he contracted for and he was also lulled into a sense of security by virtue of the release of Uri's mortgage on the property he had purchased and was thereby prevented from taking any legal steps that might be open to him for the clearance of his title or the protection of his interests. His position, therefore, would be altered for the worse by cancelling the release as prayed for by plaintiffs. His equity to have that lot discharged was at least equal to any possessed by plaintiffs, which arises exclusively, if at all, out of the subrogation doctrine and to apply it in this case for the benefit of plaintiffs would work an injustice to Wigginton's rights as well as to operate to defeat his right, and all of which would be in direct conflict with the qualification of the doctrine of subrogation hereinbefore pointed out, and which qualification we recognized and applied in the Perrine case, *supra*, under analogous facts to those appearing in this case.

Having reached that conclusion, it results that the judgment was proper, and it is affirmed.