# McCracken County v. Lakeview Country Club et al.

(Decided April 20, 1934.)

C. C. GRASSHAM for appellant.

J. D. MOCQUOT for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

This appeal, prosecuted by McCracken county, challenges the propriety· of the lower court's ruling in sustaining appellee's demurrer to its petition and dismissing it, upon its declining to plead further.

In June, 1933, the appellant, as plaintiff below, filed its petition and amended petition in the McCracken circuit court, wherein it sought recovery of some $9,330 of its county funds, which had been by its treasurer, J. C. Utterback, wrongfully converted and applied as a payment made to the appellee Louisville Title Company upon certain bonds, secured by mortgage on the property of the Lakeview Country Club, which it held as trustee for the owners.

According to the allegations of the petition and amended petition, which for sake of brevity we will hereinafter refer to as the petitions, on February 22, 1926, the Lakeview Country Club, a corporation of Paducah, Ky., secured from the Louisville Title Company, also a Kentucky corporation, of Louisville, Ky., a $40,-

**516**

000 loan, for which it executed to the title company forty $1,000 bonds, with attached interest coupons, secured in their payment, within ten years, by mortgage upon the club's therein described land and improvements. This mortgage the club executed by J. C. Utterback, now deceased, who was then its president and largest stockholder.

It further appears that thereafter the appellee Lakeview Country Club did by its duly executed and acknowledged deed convey all of its property to the aforesaid J. C. Utterback, its president, who thereafter, while also acting without bond as treasurer of plaintiff county and as such officer having custody of its funds, did without its knowledge convert and wrongfully pay therewith the Louisville Title Company, for the use and benefit of the said bondholders represented by it as trustee, the following sums, viz., February 4, 1928, $1,200, February 6, 1930, $1,110, February 13, 1931, $7,020, upon and in partial satisfaction of the $40,000 bonded mortgage debt of the Lakeview Country Club.

Plaintiff further averred in its petitions that, upon the death of the said Utterback insolvent, suit was filed by his administrator, with the will annexed, in the McCracken circuit court to settle his estate. In this suit it was set out that the Louisville Title Company had failed and that the Fidelity & Columbia Trust Company, a corporation of Louisville, Ky., had been appointed by the Jefferson circuit court receiver of its affairs, including the mortgage debt and bonds of the Lakeview Country Club, referred to supra, as same appeared by the answer and cross-petition of the said trust company filed in said action, and by which it also, as such, sought a foreclosure judgment and sale of the Lakeview Country Club's property and wherein, further, the appellee Title Insurance & Trust Company, on its motion having represented to the court that it had been by the Jefferson circuit appointed as trustee, in lieu of the Louisville Title Company, for the holders of the bonds of the Lakeview Country Club, asked that it be substituted in said administrator's action as trustee thereof for the Louisville Title Company, then in receivership. On April 17, 1933, such substitution of trustees was ordered by the court, and it further adjudged that the mortgaged property of the Lakeview Country Club, described in the petition, be sold to pay the aforesaid

mortgage bonds owing by it in the sum of $33,786.01, with interest from April 17, 1933, until paid.

Pursuant to this judgment, the club property was duly appraised at $45,000, advertised and sold at the price of $30,001 to the appellee Title Insurance & Trust Company, substituted trustee, for the use and benefit of the bondholders represented by it, and on June 14, 1933, deed thereto was delivered to it, which it now holds as trustee for the said bondholders.

Plaintiff in its petition further averred that the Title Trust & Insurance Company, trustee, now holds this property subject to an equitable lien in favor of plaintiff, by virtue of its alleged receipt and retention of these wrongful payments and misapplication of the county's trust funds made it by its treasurer, J. C. Utterback, as they in effect constitute his fraudulent investment of the county's money, in the amount of $9,330, in the aforesaid Lakeview Country Club's mortgaged lands, in that the payment of its funds by its treasurer to the Louisville Title Company, trustee, thereby and to that extent reduced the mortgage debt of the bondholders and pro tanto satisfied the lien against the club property, of which its treasurer was the sole or chief owner, with the result that both they and he have thus wrongfully profited and been unjustly enriched by the payment of the plaintiff's money—to the loss and injury of the plantiff, at whose expense these payments were made—and therefore, to avert such wrong, appellant pleaded that it should be subrogated to the rights of the appellee trustee in the mortgage lien upon which paid to the extent of the said sum. Therefore, plaintiff prayed for a judgment against the Louisville Title Company and the Title Trust & Insurance Company, as trustees for the bondholders, in the amount of $9,330 and interest and that a trust be declared in its favor, giving to it a prior lien on the land involved herein to that of the bondholders, for its enforcement and sale of said property, its costs, and for all other equitable relief.

No denial of any of the allegations of the petition or amended petition was made by appellees (the defendants below), who have thus far seen fit to rely for their defense to the case only upon their demurrer filed to plaintiff's petitions.

Upon the cause coming on for trial upon the defendants' general demurrer to plaintiff's petitions, the court sustained same upon the ground that the facts

therein pleaded did not constitute a cause of action. Plaintiff electing to stand on its petitions, the same were thereupon adjudged dismissed at plaintiff's cost.

The plaintiff, complaining of the chancellor's judgment as erroneous, prosecutes this appeal.

For the purpose of our review of this complaint thus presented, all the allegations of fact stated in plaintiff's petitions, and well pleaded, are deemed admitted by the demurrer and to be taken as true. The record thus presents for our consideration the one narrow question as to whether or not the facts as alleged and set out in appellant's pleadings, even when taken as true, are sufficient to constitute a cause of action entitling plaintiff to the equitable relief it seeks against defendants.

A survey of these facts alleged in the petition as above outlined will reveal we are here confronted with the difficult problem of determining which of two innocent parties, namely, McCracken county, the plaintiff, and the Title Insurance & Trust Company, the defendant, shall be adjudged to suffer the loss caused by the county's moneys having been wrongfully converted and paid by its treasurer, Utterback, so acting without bond, to the Louisville Title Company upon these mortgage bonds owing it by the Lakeview Country Club, whose mortgaged property was at the time of his making such payments owned or chiefly owned by him, subject to such lien.

The appellees seek to retain the county's moneys thus paid it upon the mortgage, as trustee, upon the grounds that as the county's funds were here paid it by its treasurer, Utterback, then president of the club, in the usual course of business and were accepted and retained by it as a payment made it for the benefit of the holders of the mortgage bonds without notice of Utterback's fraud, no obligation—either moral or legal—resulted or should be imposed on it to restore this payment to the plaintiff county, even though it stands admitted that the county too was innocent of all blame and without knowledge of Utterback's conversion and misapplication of its funds to such fraudulent use.

At the beginning of our consideration of appellant's contention that the allegations of the petitions stated a cause of action, good against demurrer, it is to be noted that it is here admitted that the plaintiff county's funds

are traceable and wrongly went into the Lakeview Country Club property, purchased and now held by the defendant, by virtue of the admitted payment by Utterback of the county's moneys to the defendant for a pro tanto reduction of the lien it held against the property, and it is asumed that no treasurer's bond was given the county, to which recourse could be had.

It is the contention of appellant that the petitions stated facts sufficient to constitute a cause of action against the defendant Title Insurance & Trust Company, in charging that it had money in the hands of J. C. Utterback, its treasurer without bond; that he was then also the president of the Lakeview Country Club and largest stockholder therein, and that he fraudulently and without its knowledge, expended its money, held as trustee, to discharge a pro tanto part of a mortgage lien held by defendant Louisville Title Company against the club property to secure a $40,000 loan made it and for which the club's mortgage bonds were sold and outstanding; that said bondholders and their trustee, the Louisville Title Company, thus profited at the expense of the appellant to the extent of Utterback's wrongful payment made it; and further that the appellee Title Insurance & Trust Company, its successor in trust, stands in its shoes as the purchaser of the club property at its foreclosure sale had under its mortgage foreclosure for enforcing payment of the club's bonds, and it is, therefore, neither an innocent purchaser for value nor a third party in the transaction, under the allegations of the petitions as to the county's funds paid it by Utterback, as it parted with nothing nor gave anything in consideration therefor.

In considering the merit of these opposing contentions, it may be conceded that the facts as they thus far are found in the allegations of the petition do not disclose that there has been any trafficking in or sales made of any of these mortgage bonds of the Lakeview Country Club, since the reduction of the mortgage debt resulting from Utterback's payment thereon of the $9,330 of the county's money for the pro tanto reduction of the mortgage debt or that any intervening equities have arisen by reason of this wrongful payment made upon the debt through its causing others to invest in these bonds, on account of their greater relative value caused by the mortgage debt against the club property having been reduced by this payment. We are thus here to be

520

understood as dealing with the relative rights only of the appellant and those who were holders of the mortgage bonds before or at the time of Utterback's reduction of the mortgage debt, by his unlawful payment thereon of the county's money, and are here deciding upon the demurrer, without prejudice to any intervening equities of later innocent purchasers for value of the bonds, who may have been induced, by reason of the reduction of the mortgage debt resulting from Utterback's payments so made, to invest in the bonds by reason of their apparently enhanced value. The record, as now before us, does not plead or show that any such intervening equities are here involved.

The question, therefore, now before us for determination is whether or not the admitted fraudulent use and investment by Utterback of the county's $9,330, converted and misapplied by him to the reduction or pro tanto removal of the mortgage lien held by appellees against the Lakeview Country Club property—which was then largely, if not entirely, owned by Utterback—constituted such a wrongful use and misappropriation of the county's money by Utterback, working both to his advantage and the defendant's unjust enrichment at the county's expense, as is sufficient to constitute a cause of action, entitling appellant to have impressed an equitable lien upon the mortgaged property in favor of the county, by subrogating it to the lien of the bondholders to the extent its moneys were paid upon and reduced their mortgage lien against the club property, now held by defendant as purchaser at its foreclosure sale.

It is admitted that the defendant acted as an innocent party, in due course of its business and without knowledge of Utterback's fraudulent action in remitting it this $9,330, as an officer and president of the Lakeview Country Club, to be applied upon the club's mortgage debt. However, the payments thus made operated to the profit and advantage of both the bondholders and Utterback as cash payments upon the bonds of the one and in reducing, by the amounts paid, the lien debt against the club property, largely, if not entirely, owned by the other. The defendant company in receiving the payment upon its debt surrendered no right as mortgagee of the mortgaged property nor in any wise lessened the quantum of the mortgage security, upon the faith of which the club's bonds were purchased, yet with

the original mortgaged club property thus left intact. and undiminished as the contracted security pledged for the payment of their mortgage debt, they have here received without any consideration given the appellant. county, but to the total loss of appellant some $9,000 of its funds, in effect a free and naked gift thereof not. contemplated nor contracted for when purchasing the club's bonds. Nonetheless, having received this unexpected and gratuitous payment of the county's money, appellee seeks to be left undisturbed in its retention, without being required to account for its rich harvesting of the county's funds where it has sown nothing. While it is willingly admitted that defendant's original receipt of these moneys from Utterback was in no wise wrongful, because received in ignorance of their wrongful source, it is equally clear that its insistent retention of the county's stolen funds, with present knowledge of its fraudulent payment, resulting in its unjust enrichment, cannot be regarded as rightful nor its refusal of restitution sanctioned as consonant with equitable principles of fair and just dealing. Defendant's position is. therefore clearly one where its retention of the county's money, fraudulently paid it, is against the dictates of good conscience, and it should not be suffered to so unjustly keep the same, it being without any right or title thereto save that acquired through a trustee's corruption. Under such circumstances equity should impose upon the defendant, even though in invitum, a constructive trust in favor of the wronged appellant county, requiring it to account as trustee of its funds thus coming into its hands through the wrongdoing of the county's. treasurer and should invoke, as affording an effective and rightful remedy, the doctrine of subrogation, by subrogating appellant to defendant's position as the holder of the mortgage lien against the club property and treating the lien as kept alive and unsatisfied to the extent pro tanto the same was fraudulently paid by Utterback with the $9,330 of the county's funds.

The rule is well settled and recognized that had. Utterback used the county's funds converted by him in the purchase of real estate, either by way of making therewith an initial payment or in satisfying his purchase money lien thereon, he would at once have been held to hold the property, or the interest so fraudulently acquired therein, as a constructive trustee thereof in favor of the county, whose money had been wrongfully

used in its purchase. It would appear to be a super-refinement to recognize such trust obligation resting upon the wrongdoer in such case and yet refuse to impose such equitable remedy in the instant case, in its principle substantially the same except that the wrongdoer has here misapplied the county's money by its investment in the pro tanto satisfaction of a mortgage lien of another upon property owned by him rather than applied it to the payment of a vendor's lien on property by him purchased with converted funds. In each case the wrongdoer has used the property or funds of another for his own profit and benefit, with the result that the wronged party should be adjudged in either case alike an equitable lien in the thing or property so acquired, whether invested by him in satisfying a vendor's lien on land or in removing a lien of mortgage on his land.

Effective of such just relief is the purpose and grounds of the doctrine of constructive trusts, which is thus stated in 3 Pomeroy, Equity Jurisprudence (4th Ed.) pp. 2397-2401, as follows:

> "A constructive trust arises whenever another's property has been wrongfully appropriated and converted into different form. If one person having money or any kind of property belonging to another in his hands wrongfully uses it for the purchase of lands, taking the title in his own name * * *; or if an agent or bailee wrongfully disposes of his principal's securities, and with the proceeds purchases other securities in his own name, in these and all similar cases equity impresses a constructive trust upon the new form or species of property, not only while it is in the hands of the original wrongdoer, but as long as it can be followed and identified in whosoever hands it may come, except into those of a bonda fide purchaser for value and without notice; and the court will enforce the constructive trust for the benefit of the beneficial owner or original cestui que trust who has been defrauded. * * * Wherever one person has wrongfully taken the property of another, and converted it into a new form, or transferred it, the trust arises and follows the property or its proceeds."

Also, see this rule as it is to like effect quoted and applied in the case of Gustav J. Warsco, Jr., etc., v.

Oshkosh Savings & Trust Co., 190 Wis. 87, 208 N. W. 886, 47 A. L. R. 366, wherein it was held that:

> "Money paid to a woman under a trust agreement subsequently declared void, and invested by her, with full knowledge of the facts by herself and husband, in improvements upon a homestead standing in his name, is impressed with a trust, a lien for the return of which may be impressed on the homestead."

And again in 26 R. C. L. sec. 78, p. 1232, where it is said:

> "Constructive trusts are such as are raised by equity in respect of property which has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it."

For a further extended discussion of the principles and application of constructive trusts, see the cases and annotations thereto appearing in 43 A. L. R. 1415, 47 A. L. R. 371, and 48 A. L. R. 1269.

However, the Lakeview Country Club property, in which Utterback by his payment to appellee invested the county's converted funds, and into which it is agreed it is traced and went, while not now owned by Utterback or his estate, so that a constructive trust may be imposed upon him or it as trustee in order to secure thereby a proper restitution to the county of its stolen moneys, nonetheless such character of remedy can with like justice and equitable result be reached in securing restitution by invoking the doctrine of subrogation, whereby appellant may be subrogated to the position of the defendant title company as the holder of the bonds, to the extent its mortgage lien against the Lakeview Country Club property, owned by Utterback and subject thereto, was reduced by the amount of its funds wrongfully paid, and the lien is to such extent kept alive in favor of appellant and impressed as an equitable lien upon the mortgaged property for its ratable satisfaction. The application of this rule in the absence of intervening equities, not as yet shown to be here involved, works no hardship upon the defendant in that, through Utterback's payment to it of the county's money in the amount stated, it has already received to such extent satisfaction of its mortgage debt against Utterback's country club property, independently and

.in addition to its contracted security therefor, all of which it now holds through its foreclosure and purchase at a purchase price less in amount than that of its mortgage bonds, even when reduced by payment of the county's money thereon. The. remedy of subrogation would appear here available, in so far as the relative rights of the parties to the county's funds have thus far, upon demurrer, been made to appear.

As was said by this court in the case of Probst v. Wigginton, 213 Ky. 610, 281 S. W. 834, 835:

"The doctrine of legal subrogation is not a fixed and inflexible rule of law or equity, and it does not owe its origin to statute or custom, since it is a creature of equity, invented and applied in order to do justice in a particular case and under a particular state of facts, where the law is powerless in the premises; and it is broad enough to include every instance in which one person who is not a mere volunteer pays a debt which in justice, equity, and. good conscience ought to be paid by another. That general definition is the one given by all text-writers and courts, some of which are Mr. Freeman's anotations to the case of American Bonding Co. of Baltimore v. National Mechanics' Bank of Baltimore, 99 Am. St. Rep. 466, annotations beginning on page 474; 25 R. C. L. p. 1311, par. 1; Flannary v. Utley, 3 S. W. 412, 5 S. W. 878, 9 Ky. Law Rep. 581; Allen v. Perrine, 103 Ky. 521, 45 S. W. 500 [20 Ky. Law Rep. 202, 41 L. R. A. 351]; Farmers' Nat. Bank v. Farmers' & Traders' Bank of Maysville, 159 Ky. 141, 166 S. W. 986, L. R. A. 1915A, 77; Ford v. Jones, 174 Ky. 252, 192 S. W. 28; Illinois Surety Co. v. Mitchell, 177 Ky. 367, 197 S. W. 844, L. R. A. 1918A, 931; Landrum v. Landrum, 186 Ky. 775, 218 S. W. 274; and other domestic cases referred to in those opinions. With the same unanimity it is held that, since the doctrine of subrogation is a creature of equity, it must be enforced with a due regard to the rights, legal or equitable, of others, and that it cannot be invoked so as to work injustice or to defeat a legal right or overthrow a superior equity or to displace an intervening right or title. * * * That qualification is thus stated in the volume of R. C. L. referred to, page 1321: 'Subrogation is the creature of equity, and will not be permitted where it will work injustice to

the rights of those having equal or superior equities, or where it will operate to defeat a legal right.' And on the next page the text says: 'The doctrine of subrogation will not be applied where innocent persons will be injured.' "

The appellant rests its claimed right to recover by subrogation a pro tanto equitable lien in the Lakeview Country Club property, now owned by the appellee title company, upon this equitable principle as declared and applied in the case of Young v. Pecos County, 46 Tex. Civ. App. 319, 101 S. W. 1055, 1056, where it was held that a county was subrogated to the rights of the mortgagee under the mortgage, where the husband of the mortgagor used money held by him as county treasurer to pay the mortgage. There the court said:

"It seems to us that, under the peculiar facts in this case, the appellee should be viewed by the eye of equity as standing in the most favorable position that an individual could, even by agreement, place himself in regarding his money that has been appropriated by a debtor to pay off a debt secured by a mortgage lien. F. W. Young was appellee's treasurer and the legal custodian of its money, holding it as its trustee, to be paid out only for the purposes for which it was collected by taxation from the people in accordance with law. The county itself could not divert it from the purpose for which it alone was authorized to levy and collect it, nor in any way authorize him to appropriate it to the payment of his indebtedness; nor could it, in any manner, ratify or sanction such a misappropriation of its funds. After Young applied it to the payment of his debt to Trammel & Co., it was still the money of Pecos county, and they, though they may have thought it was Young's money, became the debtors of the county for the money so received. The debt the mortgage was given to secure was not extinguished. And it would seem, from the equitable principles quoted, that the county should be subrogated to all the rights of Trammel & Co. to enforce its payment, which would include the mortgage security given by the appellant. This right of the county is one purely in equity to be subrogated to the mortgage, and it arises, not out of possession of the mortgage, or its being canceled or uncanceled, or formerly released, but out

of the fact that the payment of the debt it was given to secure was made with appellee's money. Kinkead v. Ryan, 53 A. 1053, 64 N. J. Eq. 454; Lashua v. Myhre, 93 N. W. 811, 117 Wis. 18.   * *

"By subrogating appellee to the rights of Trammel & Co. under the mortgage, the appellant is placed in no worse position than she would have been had her husband not misappropriated the county's money in the payment of a debt she had mortgaged her separate property to secure; for, had it not been for such misappropriation, her property would be charged with the payment of the debt. And it seems to us inequitable to give her the advantage of her husband's fraud by releasing her property from a debt it was mortgaged to secure, upon the ground it was satisfied by his misappropriation of the trust funds in his hands of Pecos county."

See, also, to like effect in its principle and holding, the opinion of this court rendered in the recent case of Ringo v. McFarland, 232 Ky. 622, 24 S. W. (2d) 265.

Such we conceive to be the effect of here subrogating the appellant county to the mortgage lien of the title company to the extent of its payment by Utterback, as the appellee company is thereby placed in no worse condition than it would have been had Utterback not misappropriated the county's money, by its payment reducing the debt of the Lakeview Country Club, which he, as the owner of the Lakeview Country Club property, had mortgaged it to secure. The title company is still left the opportunity to realize out of the purchased property, even when defendant is subrogated to a pro tanto part of its original mortgage lien, the whole of its debt thereby secured—$9,330 of which debt or mortgage lien appellant's money has paid—upon the faith of which, as affording ample security, it made the contracted mortgage loan. To such effect also was the holding and principle applied in the case of Title Guarantee & Trust Co. v. Haven, 214 N. Y. 468, 108 N. E. 819, 825. The bank was held to be equitably entitled to subrogation to the lien of the assessment against the devisee of the owner for the amount paid by it upon a forged check of an employer of her agent, since otherwise a mere stranger would be compelled to stand the loss as against those for whose benefit the payment was made. The court said:

"Under these circumstances, by fraud and crime committed by the employee of Mrs. Ogden's agent, it has been induced to advance the moneys gratuitously as a matter of fact, for the payment of the assessments, and the respondents thus far have reaped the benefit of this act. No possible injury or injustice can arise to them by having the lien reinstated on the proceeds of the real estate and appellant subrogated to that lien. No rights have accrued or been changed as the result of this payment by appellant which would now be impaired by the remedy of subrogation."

Influenced by the doctrine and rules of these cases quoted, very similar in their facts to those of the instant case, we are led to conclude that the learned chancellor erred in sustaining the demurrer to plaintiff's petition upon the facts as they are thus far presented by the record, wherein no intervening equities appear or are involved or prejudiced. We are not to be understood in so holding as deciding or expressing any opinion as to the rank or claimed priority of appellant's equitable lien upon the mortgaged property, or even of such equitable lien as against intervening equities of innocent later purchasers for value, should the same by later pleading and proof be made to appear are here involved. The decision of all such questions is reserved.

For the reasons indicated, we are of the opinion that appellant's petition stated a cause of action against the appellee. Therefore, we conclude that the learned chancellor erred in sustaining demurrer thereto and dismissing the petitions. The judgment so ordering is reversed, with directions to set aside the same and in lieu thereof enter judgment overruling the demurrer.