## Title Ins. & Trust Co. et al. v. McCracken County.

(Decided Jan. 31, 1936).

(As Extended on Denial of Rehearing March 27, 1936).

J. D. MOCQUOT for appellants.

C. C. GRASSHAM for appellee.

OPINION OF THE COURT BY JUDGE STITES—Reversing on original and affirming on cross appeal.

This is an appeal from a judgment of the Mc-Cracken circuit court sitting in equity. In February, 1926, the Lakeview Country Club, a corporation, borrowed $40,000 from the Louisville Title Company as trustee for bondholders. It secured this debt by a mortgage on the club's property in McCracken county. The title company issued forty bonds in the sum of $1,000 each, payable over a period of ten years, against this mortgage. Three bonds fell due in 1927, and three fell due each succeeding year until 1936, when

all of the remaining bonds became payable. The record does not disclose who the purchaser or purchasers of these bonds may be. The mortgage was executed on behalf of the club by J. C. Utterback, now deceased, who was at that time its president and principal stockholder. Subsequently, the Lakeview Country Club conveyed the property subject to the mortgage to Mr. Utterback. Utterback was also treasurer of McCracken county. In 1928, and again in 1930 and 1931, Utterback converted county funds in the aggregate amount of $9,330, and used this money in making part payments on the interest and debt due to the Louisville Title Company, trustee. The Louisville Title Company went into the hands of a receiver on June 29, 1931. Pending the receivership, Mr. Utterback died, and a suit was filed to settle his estate. The receiver appeared in the settlement suit, and by answer and cross-petition sought and obtained a foreclosure of the mortgage of the Lakeview Country Club property. The appellant Title Insurance & Trust Company succeeded the Louisville Title Company as trustee for the benefit of the holders of the bonds against the Lakeview Country Club. At the sale held pursuant to the foreclosure of the mortgage, the appellant Title Insurance & Trust Company purchased the property as trustee for the remaining bondholders at a price of $30,001. Deed to the property was delivered to it as trustee for the unpaid bondholders. On June 10, 1933, after the foreclosure sale, but before actual delivery of the deed, this suit was filed by the county seeking to have adjudged to it a prior lien on the property of the Lakeview Country Club in the amount of the funds converted, and also asking for personal judgment against the trustees for the bondholders for the amount alleged to have been received and held by them. The chancellor sustained a demurrer to the petition thus filed, and an appeal was taken from that ruling to this court. McCracken County v. Lakeview Country Club et al., 254 Ky. 515, 70 S. W. (2d) 938. It was held in that opinion that the demurrer to the petition should have been overruled.

Upon return of the case to the circuit court, an answer was filed on behalf of the appellants, Louisville Title Company and Title Insurance & Trust Company, denying certain of the material allegations of

the petition, and setting out affirmatively that the payments received by the Louisville Title Company were paid out to the holders of the bonds and are now beyond the control of the appellants, and they further asserted that the value of the property involved is not now sufficient to discharge the balance of the indebtedness represented by the unpaid bonds and interest accrued thereon. On final hearing, the court adjudged that the appellee, McCracken county, was entitled to recover the sum of $9,330, with interest, but does not say against whom this recovery is to be had. The court further adjudged that the plaintiff was *subrogated* to the rights of the bondholders to the extent of the sums wrongfully appropriated, and adjudged plaintiff a lien of equal rank to that of the holders of unpaid bonds. The court directed a sale of the property for the purpose of satisfying all claims. The Louisville Title Company and the Title Insurance & Trust Company, trustees, appeal from so much of the judgment as gives the appellee a lien pari passu with the unpaid bondholders, and McCracken County has taken a cross-appeal from so much of the judgment as refuses to give it a personal judgment against appellants or to make its lien superior to all others.

It may be observed at the outset that there is no hint or claim in the record of any participation by appellants in the fraud of Utterback. If recovery is to be had against any one, it must be because that person, though innocent, has been unjustly enriched at the expense of the county and should not, in equity and good conscience, be permitted to retain the tainted funds. Bogert on Trusts and Trustees, sec. 930 (citing this case on former appeal—note 86). The burden is on the county either to *trace* its funds or, if it is to be *subrogated* to the rights of those bondholders whose bonds were paid by the tainted money, it must show such facts as will justify a court of equity in assuming that innocent third persons will not be injured by permitting subrogation. So much was indicated upon the first appeal of this case. McCracken County v. Lakeview Country Club, 254 Ky. 515, 527, 70 S. W. (2d) 938. It appeared from the petition on the former appeal that the appellants here still held the tainted funds. This allegation was denied by the answer and

a copy of the Louisville Title Company's ledger record was introduced, showing that six of the forty bonds against the property had been paid from the tainted funds and the remaining payments had been devoted to interest. On this appeal, therefore, we have a very different case from that presented on the demurrer.

The law, as announced on the former appeal, on the facts alleged in the petition (taken as admitted by the demurrer), did not dispense with the necessity for plaintiff to prove its case when the allegations were denied by answer on the return of the proceeding to the circuit court.

The facts now before us present an entirely different situation from the picture presented by the uncontroverted allegations considered on demurrer in our former opinion. The ''law of the case'' rule invoked by appellee has, therefore, no application. Royal Collieries Co. v. Wells, 244 Ky. 303, 50 S. W. (2d) 948; McClintock v. McClure, 171 Ky. 714, 188 S. W. 867, Ann Cas. 1918E, 96.

The innocent appellants here could not be charged with the amount of the misappropriation on any theory. The Louisville Title Company was simply a conduit through which the funds passed to the bondholders. It in no way profited by the misappropriation. Its successor trustee, Title Insurance & Trust Company, never had possession of the funds in any form.

If all of the bonds were held by the same person and had been so held during all this period, we might conceivably be justified in assuming, as did the chancellor, that no one could be hurt by giving the appellee county a lien of equal dignity with that of the bondholder. We might be further justified in upsetting the sale to the Title Insurance & Trust Company on the theory that it was simply an alter ego for the bondholder and that the only value passing at the sale was the surrender of this bondholder's claim against the property. Obviously, however, that is not the case here presented. We cannot assume, in the absence of proof, that all of the bonds were held by one person, or that the present holder is the person who has been enriched at the expense of the county. None of the bondholders is a party to this suit, and no attempt was

made to show that the present holders of the bonds are the same persons who held them at the time that the alleged payments of misappropriated funds were made. Clearly, the county has failed to trace its funds into the hands of any particular person under such circumstances as would authorize or enable us to affix a trust on a particular fund. It is claimed, however, that the conflict of equities may be solved by *subrogating* the county to the rights of the bondholders who received its money.

The difficulty with this proposition is that we are confronted at the outset by the rights of the innocent holders of unpaid bonds. The only way in which it could be said that they had profited at the expense of the county is that the payments made increased pro tanto the margin of security between the amount of their claims and the value of their property. To hold this, however, we must presume that the present bondholders are the same persons who held these securities at the time the payments on both principal and interest were made, when there is nothing in the record on which such a presumption could be based. Other persons may have purchased these bonds on the faith of the apparently increased security resulting from these very payments. The burden was on the county to show that the rights of these innocent third persons would not be prejudiced in placing it on a parity with them. In other words, the burden is on the one who seeks subrogation to show that he is entitled to it. Sheldon on Subrogation (2d Ed.) sec. 11.

Furthermore, at the time the payments were made the bonds had the additional security of a presumably solvent guarantor. The record shows that the guarantor has since become insolvent, with the result that the circumstances affecting all the bondholders, old and new, have been materially altered. The unpaid bondholders have no security left but a piece of property purchased for less than the amount of their debt, and not claimed to be worth any more than was paid for it. As to the bondholders who were paid, the insolvency of the guarantor has intervened since the date of payment. Certainly under such circumstances equity would not require these innocent recipients of the payments, even assuming that the same persons held the

bonds during the entire period, to return what they have received.

There could hardly be any question of the right of the county to assert a lien against any excess in the proceeds of sale, had there been any, ahead of the general creditors of the Lakeview Country Club or of Utterback (Bogert on Trusts and Trustees, sec. 930), but here it is seeking to assert a claim against a piece of property already sold to satisfy another debt without showing an equity superior to the creditors to whom the property was conveyed in part payment of their claim. In 25 R. C. L. 1321, et seq., the text says, in part:

"Subrogation is the creature of equity, and will not be permitted where it will work injustice to the rights of those having equal or superior equities, or where it will operate to defeat a legal right. * * * The doctrine of subrogation will not be applied where innocent persons will be injured. And where the equity is a latent one it will not be enforced to the prejudice of a bona fide innocent purchaser."

See, also, Probst v. Wiggington, 213 Ky. 610, 281 S. W. 834, and cases there cited. It may be noted in passing that there are cases from other jurisdictions holding that a pro tanto subrogation will never be allowed, but that the person seeking the subrogation must show that the creditor into whose shoes he seeks to step has been paid in full. 25 R. C. L. 1318; Sheldon on Subrogation (2d Ed.) secs. 25, 70; Obici v. Furcron, 160 Va. 351, 168 S. E. 340, 91 A. L. R. 848, and note. This point has not been raised by appellants here or on the former appeal, and there are apparently no cases on the subject from this jurisdiction, although the rule has been recognized by the Sixth Circuit Court of Appeals in a Kentucky case. Columbia Finance & Trust Co. v. Kentucky Union Ry. Co., 60 F. 794. We merely mention it for the purpose of making it clear that we are not now deciding that question, nor did we on the first appeal.

Plainly, the facts established in this case fall short of presenting a situation wherein subrogation could be justified. We cannot blindly encroach on the rights

of innocent persons without some evidence to show that they will not be prejudiced by our action. We conclude, therefore, that no right of subrogation exists, and that no lien can be decreed against the property in the hands of the appellant Title Insurance & Trust Company, trustee.

The judgment is reversed on the original appeal, and affirmed on the cross-appeal.